## GULF, COLORADO & SANTA FE RAILWAY COMPANY
### v. J. B. POOL.
#### No. 1895.

1. **Common Carrier—Delivery to.**—For approved statement of the rules of law relating to actual and constructive delivery of property to a common carrier for transportation, see the opinion.

2. **Pleading—Charge Upon Issues Not Raised.**—Where, in an action against a railway company for cotton destroyed by fire on its platform, the only negligence charged in the petition was that "the defendant, by the negligent manner in which it operated and managed said platform and * * * its trains in passing said platform, caused said cotton to be destroyed by fire conveyed and imparted to it by sparks * * * from said trains," this did not charge negligence upon defendant in failing to put out the fire after its discovery; and an instruction imposing liability upon the defendant if the accident was caused by its negligence in operating its engines, "or from some other negligent act or omission," was not warranted.

APPEAL from the County Court of Bosque. Tried below before Hon. J. B. THOMPSON.

*J. W. Terry* and *Chas. K. Lee*, for appellant.—1. A party using a railroad right of way or railway platform solely for his own purposes and his own convenience, up to the time a delivery is effected to the railway company for the purpose of shipment, is as to such company a mere gratuitous bailee, and there is no liability on the part of the railway company, except where gross negligence is shown. Chalk v. Railway, 9 Am. and Eng. Ry. Cases, 106; Post v. Railway, 108 Pa. St., 585; 2 Am. and Eng. Encyc. of Law, p. 879, note 10, and cases cited.

2. There was no claim in plaintiff's petition that defendant's servants were negligent in not using the means at their command to extinguish the fire. The admission of testimony to show failure on the part of the engineer to exert himself to put out fire was therefore clearly erroneous. Railway v. Hennessy, 75 Texas, 155; Min. Co. v. Wilson, 28 Pac. Rep., 178; McCain v. Railway, 18 S. W. Rep., 537; Railway v. Terry, 42 Texas, 451.

*Lumpkin & Gillette*, for appellee.—The verdict and judgment is supported by both the evidence and the law. Rev. Stats., art. 4236; Railway v. Hall, 64 Texas, 615; Railway v. Holt, 1 W. & W. C. C., secs. 836–839; Railway v. Timmermann, 61 Texas, 663, 664; Martin, Wise & Fitzhugh v. Railway, 3 Texas Civ. App., 556.

HEAD, ASSOCIATE JUSTICE.—Appellee prosecutes this suit to recover of appellant the value of eight bales of cotton destroyed by fire while on the platform of the latter at Clifton, a station on its road. The following issues are presented by the pleading and evidence: 1. Is appellant liable as a common carrier? 2. If not liable as carrier, is it liable as bailee or warehouseman? 3. If not liable either as car-

rier or bailee, is it liable as a wrongdoer for negligently starting the fire?

If it should be found that the cotton had been delivered to appellant as carrier, there would be no question as to its liability, and the only point for determination upon this branch of the case is as to whether or not such delivery had been made. The law upon this subject, as we understand it, will be found fully stated in the following quotations from Hutchinson on Carriers:

"Sec. 88. Must be for immediate transportation.—The delivery must be to the carrier or his agent for immediate transportation; for, if the goods are delivered to him to be stored by him for a certain time, or until the happening of a certain event, or until something further is done to prepare them for transportation, or until further orders are received from the owner, the carrier becomes a mere depositary or bailee until the appointed time has expired or the other contingency happened upon which the carriage is to commence, or until further orders have been given, as the case may be; for nothing could be more unjust than to permit the owner of the goods to impose upon a mere depositary or warehouseman, whether he has yet become related to the goods as carrier or not, the extremely hazardous responsibility of the common carrier as long as it might suit his interest or convenience to do so. But the moment such orders are given, or such other conditions are fulfilled, the carrier having accepted them with that understanding, his duties and responsibilities as carrier begin.

"Sec. 90. Constructive delivery—Place fixed by agreement or usage. But, while it is the undoubted general rule that the delivery, to bind the carrier, must be made either to him or to some one with authority from him, or who may be rightfully presumed to have such authority, it is not to be understood that it is not subject to such conventional arrangements between the parties as they may choose to make in regard to the mode of delivery, or that it may not be varied by usage, or by a particular course of dealing between them. They may make such stipulations upon the subject as they see fit, and when such stipulations are made, they, and not the general law, are to govern. If, therefore, the parties agree that the goods may be deposited for transportation at any particular place and without an express notice to the carrier, such deposit will be a sufficient delivery; and proof of a constant and habitual practice and usage of the carrier to receive the goods, when they are deposited for him in a particular place, without special notice of such deposit, is sufficient to show a public offer by the carrier to receive goods in that mode, and to constitute an agreement between the parties, by which the goods, when so deposited, shall be considered as delivered to him, without any further notice. Such a practice and usage are tantamount to an open declaration, a public advertisement by the carrier, that such delivery should, of itself, be deemed an acceptance by him; and to permit him to set up, against those who had been thereby induced to omit it, the want of the form-

ality of an express notice, which had been thus waived, would be sanctioning injustice and fraud. As where, for instance, the delivery was upon a private wharf or dock, used exclusively by the carrier, and upon which it had been its custom and constant usage to receive goods left there for transportation by it, such a deposit, in the usual and accustomed manner, would be constructive notice, and would be regarded as a sufficient delivery, though the goods were not left in charge of any of its servants."

If, under the evidence, it will be found that appellant's responsibility as carrier had not attached, it will then become important to determine as to whether or not it had been guilty of actionable negligence in causing the loss. If the goods were in its charge as bailee, there is evidence which tends to show negligence on its part in causing the fire, in failing to properly cover or guard the cotton, in failing to provide proper facilities for quenching fires, and in the failure of its servants to quench this fire after it was discovered.

If the cotton had not come into the hands of appellant, either as carrier or bailee, then its liability under the evidence, apart from the issue of contributory negligence, would depend upon whether it had been guilty of actionable negligence in starting the fire, or possibly in failing to put it out after it had been discovered. The only negligence charged in the petition, however, to show liability upon any ground, is in the following language: "The defendant, by the negligent manner in which it operated and managed said platform, and the negligent and reckless manner in which it operated its trains in passing said platform, caused the said cotton to be destroyed by fire, conveyed and imparted to it by sparks, cinders, and other unconsumed combustible matter from said train, to his damage $500."

We think it clear this language was not intended to charge, and can not be construed as charging, liability upon appellant on account of negligence upon the part of its servants in failing to use proper efforts to put out the fire after its discovery. The negligence charged is in starting the fire. The court, however, gave the following among other charges to the jury: "Should you believe from the evidence that the said accident was not caused by a failure of the said company to equip its said engine and cause the same to be managed and operated as above explained, or from some other negligent act or omission of the said company, you should find for the defendant," etc.

We think the jury should have been instructed to find for the defendant, unless they found it to have been negligent in the particular manner charged in the petition, and that in view of the evidence above referred to, which suggests negligence not within the allegations, the use in this charge of the words, "or from some other negligent act or omission of the said company," was error. We are strengthened in this conclusion by the fact that the evidence as disclosed by this record is very meager in so far as it tends to show negligence on the part of appellant in the equipment or operation of its locomotives; and it is

therefore not at all improbable that the negligence found by the jury was, in the respect above indicated, not properly declared upon. Railway v. French, 86 Texas, 96.

For the same reason there was error in admitting evidence, over the objection of appellant, to prove negligence on its part outside of the charges made against it in the pleading.

Reversed and remanded.

*Reversed and remanded.*

Delivered June 12, 1895.