## ALLEN et al. v. LASSETER et al.
### No. 993.

Court of Civil Appeals of Texas. Waco.
Jan. 22, 1931.

Rehearing Denied March 5, 1931.

Clay Cooke, of Fort Worth, and Julian B. Mastin, of Dallas, for appellants.

Samuels, Foster, Brown & McGee and Bryan, Stone, Wade & Agerton, all of Fort Worth, for appellees.

GALLAGHER, C. J.

Appellants, V. W. Allen, P. C. Jeffress, and F. B. Robinson, instituted this suit in the district court of Tarrant county against appellees, L. E. Lasseter, H. W. Stoneham, H. A. Lasseter, Z. T. Lasseter, Stella Dewell, J. D. Collett, and C. A. O'Keefe, and for cause of action alleged that on the 21st of January, 1924, appellant V. W. Allen and Mrs. Anna Robinson entered into a written contract with appellee L. E. Lasseter; that said contract recited that said Lasseter owned an oil and gas lease on 5,120 acres of State University lands in Crane county, Tex., more particularly described as sections 25, 26, 35, 36, 37, 38, 47, and 48 in block 30 of said lands; that he desired to subdivide said lease into 20-acre tracts and offer the same for sale to the public; that said Allen and Robinson, for the purpose of enabling him to finance such sale, advanced to him the sum of $250; that in consideration thereof he assigned to said Allen and Robinson one-half of all moneys received from such sales, less actual expenses incurred, that he should turn over to them the first $250 received from such sales, and that he should retain for himself the next $250 so received; that thereafter all proceeds of such sales, less actual expenses, should be divided equally, one half thereof being paid to said Allen and Robinson and the other half retained by him; that if for any reason whatever all said leases should not be sold, he should assign an undivided one-half interest in such unsold remainder to said Allen and Robinson. Appellants further alleged that the said Mrs. Anna Robinson was dead and that appellant F. B. Robinson was her sole heir and had succeeded to all the rights acquired by her under said contract. Appellants further alleged that thereafter, on the 2d day of February, 1924, appellant P. C. Jeffress entered into a written contract with said L. E. Lasseter; that said contract was in all respects identical with the Allen and Robinson contract aforesaid, except that said Jeffress was to furnish only $125 and was to have only a one-fourth interest in the unsold leases.

Appellants alleged that they had paid to Lasseter the sums aforesaid and had fully complied with their respective obligations under said contracts; that they thereby became invested with an undivided three-fourths interest in said leases, in all sums received from sales thereof, and in all oil and gas produced therefrom by or for said Lasseter; that said Lasseter took said leases either in his own name or in the name of H. A. Lasseter, Z. T. Lasseter, or Stella Dewell, but that in fact all said leases belonged to him, or to him and H. W. Stoneham jointly. Appellants further alleged that the entire control and disposition of said leases was undertaken by L. E. Lasseter and that he sold a part of the same and received the proceeds; that he made various contracts affecting the same and derived therefrom large profits amounting to more than $500,000; and that he denied that they had any right, title, or interest therein. Appellants

further alleged that because the exclusive control and management of said leases were confided to said Lasseter, he became a trustee for them and each of them. Appellants further alleged that said leases had at that time a value of more than $1,000,000; that large quantities of oil and gas were then being produced therefrom; that the oil production alone exceeded 20,000 barrels per day.

Appellants further alleged that theretofore on May 31, 1927, they had filed a suit in the district court against said L. E. Lasseter for an accounting of the profits derived from the transactions aforesaid, and that they were induced by misrepresentation, concealment, and fraud to accept the sum of $15,000 in compromise and full settlement of said suit and all their claims under said contracts. The specific allegations of misrepresentation, concealment, and fraud will be recited in connection with the discussion of the same in the opinion herein.

Appellants prayed for the appointment of an auditor, for examination and report by him of all Lasseter's transactions in connection with said leases, for the appointment of a receiver, and for judgment for such sums of money as they might be found entitled, and for general relief.

Said Stoneham, made a party defendant in the court below, filed no answer and was subsequently dismissed from this suit. Appellees, being all the other parties defendant in the court below, filed a joint answer. They pleaded in bar the compromise and settlement referred to in appellants' petition, and further alleged that the same included an agreed judgment against appellants in their favor, duly entered in said original suit. They further pleaded that said Collett and O'Keefe on March 26, 1925, acquired in good faith for a valuable consideration the entire interest in said oil and gas leases on said lands. They denied that appellants had any right in or to the leases on any of said sections of land, but a recital of their pleadings on this issue is not deemed necessary.

The case was tried to a jury. The parties executed and filed a written agreement which recited: "In order to expedite the trial of this case and to simplify and eliminate the issues to be submitted to the jury, it is agreed that this case be tried and submitted upon the sole issue as to the right of the plaintiffs to set aside and void on grounds of fraud alleged by them, the former settlement and judgment set forth in their petition." After reciting that all other issues involved in the case were reserved for later determination by the court in event the court should decide in plaintiffs' favor on such issue, said agreement further recited: "In case said jury or court should decide that said former settlement or judgment is binding upon plaintiffs, then judgment shall be immediately entered in favor of the defendants." The court at the conclusion of the evidence instructed the jury to return a verdict for the defendants. Upon the verdict so returned judgment was duly entered denying appellants any recovery herein.

### Opinion.

Appellants present a single assignment of error, in which they assail the action of the court in instructing a verdict against them. They present thereunder a single proposition, in which they contend that the testimony herein showed or tended to show that, upon the filing of their original suit and in response thereto, said L. E. Lasseter represented that their interests in the leases on said sections of land had long since been forfeited and were valueless, and that he then owned no interest therein and was then insolvent; that they relied upon such representations in entering into said compromise and settlement and in permitting the judgment included therein to be entered by the court; and that they would not have agreed to the same, or any of the same, if they had known the true facts regarding the status and ownership of such leases. They further contend that the court should have submitted such issues to the jury for determination. The testimony introduced shows that L. E. Lasseter, neither at the time he entered into the contracts involved in this case nor at any time thereafter, so far as shown, owned or held an ordinary oil and gas lease on any of the sections of land described therein. The testimony does show, however, that any person might file with the county clerk an application for a permit for the development of oil and gas on any section of such lands, and that upon the payment of the filing fee of $1, the clerk would record the same, and that upon tender of such recorded application to the land commissioner, with the further sum of 10 cents per acre for each acre included in the application, the commissioner would issue a permit conferring upon such applicant the exclusive right to prospect for and develop petroleum and natural gas within the designated area for a specific term of years. The applicant's prior right to such permit expired in thirty days if not so presented to the land commissioner with the required charges as aforesaid. Each applicant, however, was restricted to an aggregate of four sections within a prescribed radius. Said L. E. Lasseter was at that time, and had been for a long time prior thereto, filing from time to time such applications in his own name, in the name of two brothers, his codefendants herein, and others, on various sections of such lands, both in block 30, in which the sections described in said contracts were situated, and also in block 31 adjoining the same. At the date of the Allen contract Lasseter did not have an application

on file with the county clerk covering any of the sections embraced in the contracts involved herein, and had not had any such filings prior thereto as far as shown. Thereafter, on January 23, 1924, he filed applications on four of such sections in his own name and on the other four in the name of his brother Z. T. Lasseter. These applications expired by operation of law at the end of thirty days thereafter. No further filings were made on said sections until August 16, 1924, when he filed on four of the same in the name of said Z. T. Lasseter and the other four in the name of his brother H. A. Lasseter. Such filings were renewed from time to time, the last filing having been made on March 2, 1925. On March 26, 1925, said Lasseter, his two brothers and others in whose names applications had been filed by him, entered into a contract with Collett and O'Keefe, by the terms of which Collett and O'Keefe were to furnish the necessary funds to pay the charges required for the issuance of permits on said applications, and various others not involved herein, and secure the issuance of such permits to the respective parties holding such applications, and such holders bound themselves to immediately transfer said permits when issued to said Collett and O'Keefe, and agreed that they should have the management, control, and disposition of the same. The permits so issued were transferred to Collett and O'Keefe in accordance with such agreement. While such transfers apparently covered the entire interest of the permit holders, the real contract was that Collett and O'Keefe should have only a one-half interest therein and should hold the remaining half as the property of L. E. Lasseter or other holders of such permits, respectively.

Appellee Lasseter's contention that appellants had no interest in the leases or permits acquired by Collett and O'Keefe as aforesaid, is based on the fact that the applications on the sections described in said contracts made by him in his own and his brother's name on January 23, 1924, were not renewed but were permitted to lapse. He testified that it was his intention at the time he executed said contracts to embrace therein the same section numbers in block 31, and not in block 30, as he did do. He further testified that in pursuance of said contracts he did attempt to sell interests in the rights he held at the time in said numbered sections in block 31, and not in block 30. He further testified that appellant Jeffress at the time occupied the same office with him, used one side of the same double desk he himself used, and assisted to some extent at least in advertising and selling such rights as were sold. The testimony shows that out of the proceeds of such sales Lasseter returned to Allen and Robinson the said sum of $250 advanced by them and to Jeffress the $125 advanced by him under said contracts. He testified that the remaining proceeds were expended in a futile effort to make additional sales. The testimony further shows that shortly after the filing of appellants' original suit a hearing was had on their application for receiver, and that a receiver was then appointed and remained in charge of the properties involved until the compromise and agreed judgment therein on December 1st thereafter. The testimony further discloses that at the time of such hearing about 10,000 barrels of oil per day were being produced from such properties and that large sums of money had been received and large expenses incurred in connection with such properties. The testimony further shows that thereafter the receipts from the operation of said properties and the sale of rights therein were much greater than contemplated at the time of such compromise.

█ The trial in the court below was by the express agreement of the parties confined to the determination of the issue of appellants' right to have the compromise agreement and judgment set aside and avoided on their allegations of fraud set forth in their petition and the testimony submitted thereunder. Where an action is based on fraud, the facts constituting the same must be alleged and such allegations present the issues to be determined. Baines v. Mensing Bros. & Co., 75 Tex. 200, 203, 12 S. W. 984; Hendrix v. Nunn, 46 Tex. 141, 149; Parker v. Allen, 33 Tex. Civ. App. 206, 76 S. W. 74, 78 (writ refused); Smith v. Guerre (Tex. Civ. App.) 175 S. W. 1093, 1094, par. 2; Crawford v. El Paso Land Improvement Co. (Tex. Civ. App.) 201 S. W. 233, 238, par. 10; J. M. Radford Grocery Co. v. Flynn (Tex. Civ. App.) 202 S. W. 332, 333, par. 3; San Antonio & A. P. Railway Co. v. De Ham, 93 Tex. 74, 78, 53 S. W. 375; Gulf, C. & S. F. Ry. Co. v. Pool, 10 Tex. Civ. App. 682, 31 S. W. 688, 689. Appellants alleged both affirmative misrepresentations and concealment. The substance of the misrepresentations alleged was that L. E. Lasseter had no right, title, or interest in said leases or the proceeds thereof; that he was insolvent and no recovery against him could be collected; that the transfer to Collett and O'Keefe was a bona fide sale; that they were innocent purchasers and that they were paying the $15,000 consideration for such compromise and settlement merely to free said properties from appellants' claims. The testimony offered in support of the allegation that Lasseter denied having any interest in these leases was brief. The contracts sued on were dated in January and February, 1924, respectively. Allen testified that some time in the year 1926, a year and a half or two years after the date of his contract, he met Lasseter on the street in Fort Worth and asked about these leases, and Lasseter said he had let

them forfeit, that he didn't have any money to pay the rental on them, and that he didn't think they were worth a "damn" anyhow. Allen further testified that he never saw Lasseter again until after the compromise. Jeffress testified that he met Lasseter on the street some time during the year 1925; that he inquired about these leases; that Lasseter told him, "I just filed on that stuff"; that he said to Lasseter, "I thought you said you had a three years lease on it when you sold it to me"; that Lasseter replied: "No, I was just filing on that. I didn't think anything of it and I let it forfeit." He further testified that he saw Lasseter again in May, 1927, and that Lasseter said at that time that he had made $3,000 in south Texas; that he did not see or talk to Lasseter again until after the compromise. Lasseter testified in this connection that he never saw Allen for more than two years after the date of these contracts, but that he did tell Jeffress that his rights had been forfeited. Appellants were represented in the filing of the first suit and in the compromise thereof subsequently effected by their attorney, Mr. McLean. He testified that before filing the original suit he called on Mr. Collett and inquired about the interest of L. E. Lasseter in said properties; that he told him said Lasseter had an interest therein but he did not know just what such interest was. McLean further testified that no one told him that L. E. Lasseter had no interest in said property, that he knew said Lasseter did have some interest in said property at the time he agreed to the compromise, and that he made an estimate of the amount of such interest. The testimony offered in support of the allegation that L. E. Lasseter was insolvent was also brief. McLean testified that after the conversation with Collett above referred to, he had a conversation with Mr. Phillips, who represented the defendants in the original suit; that Phillips stated that Lasseter didn't have anything as far as he knew and was indebted to him for a small attorney's fee which he was unable to pay. Mr. Phillips died before the compromise was effected. Mr. McLean further testified in this connection that he was not influenced by this statement for the reason that he found that Phillips was mistaken, that he knew after taking Collett's deposition that Lasseter was not insolvent, and that he was able to pay a substantial judgment if one were recovered against him. There was no attempt to show that Collett and O'Keefe were not purchasers of the half interest in the permits held by them in good faith and for a valuable consideration. Mr. McLean testified in this connection that nobody represented to him that Collett and O'Keefe were the sole owners of that business nor that they were to pay the $15,000 received in the compromise settlement; that he understood at the time that said sum so paid was to come out of

Lasseter's part of such business. The substance of appellants' allegation of specific fraudulent concealment was that L. E. Lasseter concealed himself, evaded court summons, and refused to testify or give any accounting to them of his trusteeship, and that Collett and O'Keefe concealed the fact that they were holding said moneys and leases for the joint account of themselves and said Lasseter, and thus aided and abetted him in securing said compromise settlement. Lasseter resided in Fort Worth. A hearing was had and a receiver appointed on appellants' application a few days after the filing of their original suit. Lasseter did not appear at that hearing. There is testimony that at the time of said hearing Lasseter's copy of the Allen contract was lost and that Allen's copy thereof was misplaced. McLean testified that prior to such hearing he asked Phillips to produce Lasseter and let him talk to him, and that Phillips said he would do so when McLean submitted his copy of the contract for examination. McLean further testified that he wanted Lasseter on the stand at that hearing; that he did not know whether he had process issued for him or not but he possibly got out a subpœna for him; that he did not know what effort was made to serve such subpœna if issued. He also testified that Lasseter was in Fort Worth at the time and that he tried to get his deposition but did not succeed. Whether in pursuance of such effort interrogatories to Lasseter were ever filed was nowhere shown. Allen testified that they made an effort to get Lasseter's testimony at that hearing; that such effort continued a week or two; that he thought Jeffress and one or more deputy sheriffs hunted for him. Jeffress testified that he went with the constable to Lasseter's office several times and that they also went to his residence. Nothing more specific in this connection was shown. There was no affirmative showing that any subpœna for Lasseter to appear at that hearing was ever issued. None of the officers referred to in the testimony of Allen and Jeffress were called to testify. There was no attempt to show that Lasseter ever knew that they were searching for him. There is no testimony that any attempt was made to ascertain the extent of L. E. Lasseter's holdings from either of his brothers. That the true facts could have been ascertained from that source is shown by the testimony of Jeffress himself that almost immediately after the compromise was effected he saw depositions from them taken in another suit, in which the extent of L. E. Lasseter's interest was fully disclosed. Notwithstanding he then learned the real facts, this suit was not filed until more than six months thereafter. McLean testified that he went in person to Crane county to investigate the title as disclosed by the records there, and that he sent an expert examiner to Austin to make a thorough

,

examination of the records in the land office relating thereto; that he was fully apprised of the facts shown by such records at the time he, with the approval of appellants made the compromise settlement; that he never talked to O'Keefe about the matter because he was at home sick and had been for sometime; that Collett did not make any fraudulent representations about the situation to him; that he got a straight answer from Collett to every question he asked him at the receivership hearing; that no fraud so far as he knew was perpetrated upon him in the negotiations relating to such settlement. He further testified that he had some doubt whether after the abandonment by Lasseter of the filing of applications for permits on the sections involved in this case for more than six months, the subsequent refiling of such applications after such lapse of time would inure to the benefit of appellants; that he considered that they might be defeated as a cold matter of law or that they might be defeated as a matter of evidence, and that while he was not satisfied with the sum of $15,000 agreed on as consideration for the compromise, it was the best offer he could get; that he stated to appellants that there was a possibility they could not recover anything and that they might get a whole lot; and that after his investigation he thought really it would be best to accept the offer.

The testimony as hereinbefore recited shows without controversy that McLean, who filed the original suit for appellants and negotiated and consummated the compromise settlement, knew that L. E. Lasseter owned an interest in the properties involved at that time and that such interest was valuable. The only material facts unknown to him at that time were the extent of such interest and its actual value. The testimony shows that the extent of the interest of L. E. Lasseter could have been easily ascertained by taking the depositions of his two brothers. They did disclose such interest fully in depositions taken before the compromise but not seen by appellants until shortly after the same was consummated. Such compromise was not effected until about five months after the hearing on the application for receiver and the record fails to disclose any effort whatever to take L. E. Lasseter's deposition during that time or to otherwise ascertain from him the real facts. The control and management of these properties, so far as the interests of appellees were concerned, were vested in Collett and O'Keefe. McLean testified that Collett never refused to give him any information which he possessed. Besides, the receiver appointed at the instance of appellants had at the time of the compromise been in charge of the properties since his appointment shortly after the institution of the suit. Whatever information he had acquired during that time was presumably accessible to all parties. The largest and most profitable sale of mineral rights was not made until May 1, 1928, some five months after the compromise. There is no testimony whatever to indicate that such favorable sale could have been reasonably foreseen at the time of the compromise. The authorities are in accord in holding that to entitle one to avoid a contract or settlement on the ground that he was induced to enter into it on the faith of false representations, it is essential that he should have been ignorant of the falsity of such representations and should have relied on the truth thereof. If, before he acted upon such representations, he discovered that they were false, he cannot claim that he was deceived and thereby avoid such contract or settlement. Dossett v. Franklin Life Insurance Co. (Tex. Com. App.) 276 S. W. 1097, 1098, and authorities there cited; Thrower v. Brownlee (Tex. Com. App.) 12 S.W.(2d) 184, 186, par. 4; Tucker v. Smellage (Tex. Civ. App.) 297 S. W. 875, 877, par. 3; Thames v. Smith (Tex. Civ. App.) 280 S. W. 859, 860. The right to set aside a contract of settlement on the ground that the same was induced by false representations is defeated if the party claiming to have relied thereon knew that such representations were false in any material particular. It is not necessary that he should have known that the representations were wholly false, or the exact extent of their falsity. Wortman v. Young (Tex. Com. App.) 235 S. W. 559, 561, and authorities there cited; Waggoner v. Zundelowitz (Tex. Com. App.) 231 S. W. 721, 727, par. 11, and authorities there cited; Donoho v. Hunter (Tex. Com. App.) 287 S. W. 47, 49, par. 4; 1st Black on Rescissions & Cancellation, § 117.

The uncontradicted evidence shows conclusively that McLean, at the time he negotiated and consummated the compromise under consideration, had such knowledge of the facts as, under the authorities last above cited, defeated appellants' attempt to avoid and set the same aside. The trial court properly instructed a verdict for appellees, and its judgment is therefore affirmed.