## MOST WORSHIPFUL GRAND LODGE FREE & ACCEPTED MASONS OF TEXAS et al. v. HAYES et al.
### No. 11608.

Court of Civil Appeals of Texas. Dallas.
April 13, 1935.

Mike E. Smith and John O. Ragan, both of Ft. Worth, and House, Wilson & House, of Dallas, for plaintiffs in error.

Currie McCutcheon, of Dallas, for defendants in error.

BOND, Justice.

From a judgment in favor of Alonzo Hayes and against Most Worshipful Grand

Lodge Free & Accepted Masons of the state of Texas for $600, founded upon an alleged amount of relief fund benefits due her upon the death of her husband, Earl Hayes, by reason of his membership in "Pride of Dallas Lodge No. 135," a subordinate fraternal organization, the defendant has appealed.

The pleadings and undisputed evidence show that, in 1900, by virtue of a marriage certificate, Earl Hayes and Alonzo Hayes were married and were never divorced; that the plaintiffs, Rolland Hayes and Willie Hayes, are the sons and only children of Earl Hayes and Alonzo Hayes; and that, in 1905, Earl Hayes, without fault on the part of Alonzo Hayes, abandoned his wife and children, and, with the exception of occasional visits, continued to live separate and apart from them to the time of his death. In 1920, Earl Hayes made application to the subordinate lodge for membership in the Masonic Order, representing himself to be a married man; that Emma Hayes, with whom he was then living, was his wife; and that the marriage had been entered into by virtue of a legally issued license. Whereupon the local lodge, under the provisions of its charter, demanded of Earl Hayes and Emma Hayes the production of the certificate and in response thereto they each represented that the certificate had been lost or misplaced. On these assurances, the local subordinate lodge accepted Earl Hayes' application; initiated him into the order, collected his dues and benefit fees, and accorded to him and his putative wife, Emma Hayes, all the rights and benefits of membership under the constitution and laws of the order.

In 1930, Earl Hayes died, and soon thereafter Emma Hayes, representing herself as his surviving wife, made the necessary proof of death and demanded payment of the relief benefits guaranteed to a wife of a deceased member of the order. Without knowledge that Alonzo was the real wife of the deceased and that Emma was not his wife, and on the representations of Earl Hayes that Emma was his legal wife, he holding her out to the public as such, and living in the same house with her as his wife, and she caring for him during his last illness and affording him a proper burial, the Grand Lodge paid to Emma Hayes the $600 relief fund benefit.

The following provisions of the constitution of the Grand Lodge, which was pleaded and made a part of the plaintiffs' petition, control we think the liability on the part of the lodge for relief benefits:

"Article VII, Section 1—The Most Worshipful Grand Lodge Free and Accepted Masons of Texas is hereby declared to be and is a charitable Institution and extends its charity or relief to worthy persons and its members in accord with its own fixed laws and rules; therefore, Relief or Charity shall not ever be paid to the Estate of Master Masons and no Wills or Due bills, debts or transfer debts; notes or obligations given or made by a Master Mason in his lifetime shall not be recognized by this Grand Lodge and no person except; 1st, a Master Mason's wife; 2nd, a Master Mason's child or children; 3rd, a Master Mason's mother; 4th, a Master Mason's unmarried sister; 5th, a Master Mason's father; 6th, a married sister, brother or other person who cares for a Master Mason in his last illness becomes and is hereby recognized as the beneficiary of a dead Master Mason; with provisions hereafter named."

"Article VII, Section 2—The Grand Lodges shall not extend relief or charity to the wife of a Master Mason, who sends her husband during his lifetime to a poor house, nor shall she be entitled to draw Relief benefits if she is not living in the house with him at the time of his death, or if she deserted and failed to care for him while ill, or if she has quit or separated from him by living under the roof of some other person or if she failed or refused to attend him in his last hours of illness or if she in any way was the cause of his death by shooting, poisoning or causing the same to be done, she shall not be entitled to draw Relief benefits. No common law wife shall ever be entitled to draw Relief Checks or Relief benefits on account of the death of a Master Mason."

"Article VII, Section 7—When a Master Mason has no wife, his child or children become his legal beneficiaries; when he has neither wife nor children his mother becomes his legal beneficiary, when he has neither wife, children, nor mother, his unmarried sisters become his beneficiaries' and when he has no wife, child, mother or an unmarried sister, his father becomes legal beneficiary; 6th, his married sister or brother, provided she or he cared for him in his last hours of illness, and 7th a person who cared for a brother Master Mason in his last illness and they shall be the only persons entitled to draw relief benefits on account of a dead Master Mason."

■ The constitution and laws of the order constitute the contract between Earl Hayes and the Grand Lodge. The local lodge being merely a subordinate organization, acting only for and in behalf of the Grand Lodge in reference to accepting members, collecting dues, and distributing the benefits. It has no separate entity as to the benefits payable to beneficiaries of deceased members. There was no policy of insurance issued by the Grand Lodge and no designated beneficiary by name provided on the death of a member, thus the rights and limitations of relations are named in the constitution in the order of priority; "First, to the wife of a Master Mason, if she is living; Second, to the legal child or children, if living. * * *" The rights of the children are subordinate to the rights of the wife, and if the wife is living, as in this case, the children have no interest in the contract. So, we are concerned only as to the rights of the wife Alonzo Hayes, the children having no interest in the beneficiary fund.

■ It is clear, we think, the above provisions of the constitution, naming the wife first in order as a beneficiary, impels her to bear toward the deceased member, her husband, the following relationship to entitle her to the benefits: (1) She must be at the time of the death of a Master Mason living in the same house with him; (2) she must not be separated from him and living under the roof of some other person; (3) she must have cared for him while ill and attended him in his last hours of illness; and (4) she must not be a common-law wife (article VII, section 2, supra). These limitations on the wife to become a beneficiary are contractual.

■ It is conceded by the defendants in error that Alonzo Hayes was not living in the same house with her husband at the time of his death; that she was separated from him and living with her grown sons in a distant community away from him; that she did not attend to him in the last hours of his illness, and that she did not go to his funeral or accord to him the burial as required by the laws of the order. The record further reveals that the defendants in error furnished to the lodge no proof of loss or demanded payment of the benefits until long after the payment was made to Emma Hayes. There is no contention that the plaintiff in error knew that Emma was not the wife of Earl Hayes, or that it knew of their concubinage; therefore, Earl Hayes was not misled to his damage by the fact that the lodge accepted him as a member and certified that he was a member in good standing. He knew his relationship with Emma Hayes and the lacking of insurable interest of his wife Alonzo Hayes by virtue of the limitations placed on her by the contract. Alonzo Hayes could have no rights superior to that of her deceased husband. She stands in his shoes in so far as her suit for this benefit is concerned. She had no insurable interest in the life of Earl Hayes, such as to authorize her to recover, under the contract.

■ Furthermore, we submit that a reasonable construction of this record leads to the inevitable conclusion that the deceased member, Earl Hayes, perpetrated a fraud on the lodge in securing a membership in the order, and by reason of said fraud the lodge has been caused to pay the benefit fund in full to Emma Hayes, whom it believed was the lawful wife and beneficiary of the member and entitled to same, therefore, it would be inequitable and unjust to require a double payment.

By the terms of the contract, as expressed in article VIII, section 11, the subordinate lodge, under penalty of being suspended by the Grand Lodge, was required to have the candidate for membership to turn over to its investigating committee a marriage certificate, or the applicant is required to send such certificate along with his application before the applicant shall be accepted into the order.

■ The defendants in error contend that the local lodge was negligent, imputable to the Grand Lodge, for accepting the application of Earl Hayes and electing him to membership without a compliance with the terms of this provision, and that the presumption is, if Earl Hayes made any false or untrue statement as to his marriage with Emma, the negligence of the lodge is tantamount to a waiver, or ratification of the invalidity of the application, and validates the contract flowing therefrom. It is true that insurance carriers could waive the invalidity of a contract in the particular referred to by treating the contract as valid after it acquired knowledge of the facts which would render it invalid; but, there is no rule of law that requires an insurance company, upon notice of some fact not constituting knowledge of the falsity of the statements, upon which a policy is issued, to inaugurate an investigation and exercise diligence to ascertain whether such representations were

The doctrine of waiver or ratification is founded upon the fact of knowledge of all the facts, and not upon negligence. The fact that the lodge by the exercise of diligence in requiring the production of marriage certificate before the acceptance of Earl Hayes as a member might have acquired knowledge cannot be substituted for the existence of actual knowledge. The negligence, if any, of the subordinate lodge cannot be deemed a waiver or ratification of the fraudulent representations of the deceased member as to validate the contract.

We think the pleadings and testimony, considered as true, are not sufficient to establish legal liability on the part of the plaintiffs in error; it, therefore, becomes our duty to reverse the judgment of the lower court and here render judgment for the plaintiffs in error. It is so ordered.

Reversed and rendered.