**Paul BODOVSKY and Charles Everson, Appellants,**

v.

**TEXOMA NATIONAL BANK OF SHERMAN, Appellee.**

**No. 19641.**

Court of Civil Appeals of Texas, Dallas.

May 10, 1979.

Rehearing Denied July 23, 1979.

Stephen F. Hefner, Hefner & Associates, Roger D. Sanders, Jarvis, Grisham & Sanders, Sherman, for appellants.

Paul Brown, Brown, Hill, Ellis & Brown, Sherman, for appellee.

Before GUITTARD, C. J., and AKIN and ROBERTSON, JJ.

GUITTARD, Chief Justice.

In this suit on certain promissory notes, the defendants pleaded fraudulent representations and fraudulent concealment as a defense and as an offset, and also counterclaimed for damages for fraud. After a jury trial, the court awarded plaintiff judgment on the notes, disregarding certain findings in defendants' favor. With respect to the counterclaim, the court sustained plaintiff's plea of limitation, refusing to disregard other findings to the effect that defendants discovered the fraud, or should have discovered it, more than two years before they filed their plea of fraud. Defendants appeal from both aspects of the judgment. We hold that unchallenged jury findings support the allegations of fraud as a defense or offset to the main claim, but that the plea of limitation was properly sustained with respect to the counterclaim because of jury findings that more than two years before filing their counterclaim, defendants discovered some of the misrep-

resentations and became aware of facts that would have led a reasonable person to make an investigation that would have revealed the fraud. Accordingly, we reverse and remand with instructions to render judgment denying recovery on the notes, except to the extent that they cover advances not affected by the fraud, and we affirm denial of recovery on the counterclaim.

### 1. *Fraud as a Defense or Offset*

The indebtedness in question was initially incurred in 1969, when defendants Bodovsky and Everson borrowed $18,500 from Texoma National Bank of Sherman to finance their purchase of certain restaurant equipment on which the bank held a lien. At the same time defendants borrowed $4,000 as operating capital for their restaurant business. Defendants made payments from time to time and signed renewal notes in various amounts in 1970, 1971, and 1972. Another renewal note in the amount of $13,000 was signed in 1973 by defendant Bodovsky but not by defendant Everson. This note included a balance on the 1972 note, as well as other funds advanced by the bank to defendants.

The court submitted special issues with respect to defendants' allegations of affirmative representations and of concealment. The jury found that the bank's officers made various representations they knew were false, or made them with the intention of not fulfilling them, and that such representations were material inducements and were relied on by both defendants in purchasing the restaurant equipment. The jury also found in response to issues ten, eleven, and twelve that defendants did not discover that the representations were false before they signed renewal notes in 1970, 1971, and 1972. The judge disregarded these latter findings with respect to certain of the representations, thus holding that the evidence established as a matter of law defendants' discovery of the falsity of those representations before they signed the renewal notes. Among the representations that were so discovered, according to the judge, were that all the restaurant equipment would become defendants' property and that it was free of debt.

Corresponding findings with respect to other representations, however, were not disregarded and stand here without challenge. Among these representations were that the restaurant equipment had substantial value and could have been sold without difficulty. Consequently, we must determine whether the judgment can be supported on the theory that defendants discovered the falsity of some, but not all, of the representations before they signed the renewal notes.

Apparently, the trial court submitted the issues concerning defendant's discovery of the falsity of the representations before signing the renewal notes on the theory that by signing the renewal notes with such knowledge defendants waived the fraud and affirmed or ratified the obligations represented by the notes, under the rule applied in such cases as *Gaylord Container Division v. H. Rouw Co.*, 392 S.W.2d 118, 120 (Tex.1965), and *Shaw Equipment Co. v. Hoople Jordan Const. Co.*, 428 S.W.2d 835, 839 (Tex.Civ.App.—Dallas 1968, no writ).[1] Consequently, the question before us is whether the court properly applied the doctrine of waiver or ratification because of defendants' execution of the renewal notes after discovery of part, but not all, of the representations which the jury found to have been material inducements to the original transaction.

The bank cites cases holding that waiver or ratification requires discovery of only the material facts, not knowledge of the full extent of the falsity of the representations on which the defrauded party relied. *Waggoner v. Zundelowitz*, 231 S.W. 721, 727 (Tex.Com.App.1921, judgmt. adopted); *Caprito v. Grisham-Hunter Corp.*, 128 S.W.2d

---

1. The basis for judgment is not clear, since the bank did not plead waiver or ratification, as required by rule 94, Tex.R.Civ.P., and does not contend in its brief here that the judgment can be supported on either of those grounds, although it relies on cases dealing with waiver and ratification. This lack of pleading is immaterial in view of our disposition of the case.

149, 159 (Tex.Civ.App.—Eastland 1939, writ dism'd); *Allen v. Lasseter*, 35 S.W.2d 753, 757 (Tex.Civ.App.—Waco 1931, writ ref'd). Other authorities state that waiver of the fraud and ratification of the original transaction must be based on proof that the ratifying party had full knowledge of the fraudulent acts at the time of ratification. *Wise v. Pena*, 552 S.W.2d 196, 200 (Tex.Civ. App.—Corpus Christi 1977, writ dism'd); *Viracola v. Dallas Int'l Bank*, 508 S.W.2d 472, 474 (Tex.Civ.App.—Waco 1974, writ ref'd n. r. e.); *Andrews v. Powell*, 242 S.W.2d 656, 661 (Tex.Civ.App.—Texarkana 1951, no writ). Accordingly, it is said that the doctrine of waiver or ratification is founded on knowledge of all the facts and not on negligence in failing to discover them. *Most Worshipful Grand Lodge Free & Accepted Masons v. Hayes*, 82 S.W.2d 411, 414 (Tex.Civ.App.—Dallas 1935, no writ).

Defendants rely principally on *Deaton v. Rush*, 113 Tex. 176, 252 S.W. 1025, 1030 (1923), in which a plaintiff was held not to have waived her claim for rescission of an exchange of lands by failing to bring suit promptly after discovering that some of the representations made to her at the time of the exchange were false. The opinion states that the misrepresentations she discovered did not constitute "the material facts of fraud in the trade."

This element of materiality is the only theory on which these apparently conflicting authorities can be reconciled. In order to establish waiver or ratification, the proof must show that the defrauded party had knowledge of the material facts concerning the fraud at the time of making a new contract or taking other action inconsistent with repudiation of the original transaction. Although materiality is a necessary element, the test of materiality in this context has never been clearly stated. Jury findings, as in this case, that certain representations were material inducements to the original contract and had not been discovered to be false at the time of the alleged waiver or ratification, are not conclusive. Under our interpretation of *Dea-*

*ton v. Rush*, the test is whether the fraudulent representations actually discovered were material in the sense that a person of ordinary prudence, after such discovery, would not have continued to rely on the other representations made at the time of the original transaction. If so, it would be consistent with the actual results in all the cases to hold that execution of a new contract based on the original transaction waives the fraud and ratifies the original transaction.

This test, when applied to the findings in this case and the judge's action in disregarding certain of them, leaves a fact question that was not submitted to the jury. The false representations which the judge found as a matter of law to have been discovered by defendants before signing the renewal notes are the following: that the false shingle roof, carpets, and light fixtures were a part of the restaurant equipment and would become the property of defendants; that a loan could be made with the restaurant equipment as the only collateral because of its value; that the bank would sell the restaurant to defendants at half-price for $18,500; that everything they saw in the restaurant was being included in the sale; that there was no outstanding indebtedness on the restaurant; that all the items described in the former owner's bill of sale were free and clear of debt; and that the difference between their note and the indebtedness of the former owner would be absorbed in a new note being signed by him. On the other hand, the jury's findings of non-discovery stand unchallenged with respect to the following representations: that the bank would make defendants a "good deal" on the restaurant; that the restaurant equipment had substantial value; that no business records were available for inspection; that the bank had loaned the former owner $37,000 to open and operate the restaurant; that the bank had already written off the former owner's note as a bad debt for tax purposes; that if defendants did not make a go of the restaurant, the equipment could be sold without difficulty; that another party had offered more than defendants were getting the

equipment for and that still another was interested in purchasing; that all of the equipment described in the former owner's bill of sale was being conveyed to them; and that the difference between the amount of their note and the indebtedness of the former owner would be absorbed in a new note being signed by the former owner.

In view of these unchallenged findings, the judge could properly render judgment for the bank only if the evidence established as a matter of law that the misrepresentations discovered were material in the sense already explained, namely that after such discovery persons of ordinary prudence in defendants' circumstances would not have continued to rely on the representations which were not discovered. Ordinarily, this is a fact question because waiver is a question of intention and presents a question for the jury when it is a matter of inference. *Ford v. Culbertson*, 158 Tex. 124, 308 S.W.2d 855, 865 (1958).

After reviewing the record, we conclude that a fact question is presented in this respect. The bank has not challenged the trial court's finding that a confidential relationship existed between defendants and the bank's officers at the time of the original transaction. There is evidence that when defendants discovered certain debts against the restaurant equipment, the president of the bank arranged to take care of the debts and advised defendants not to worry. Under these circumstances we cannot say as a matter of law that when defendants executed the renewal notes, persons of ordinary prudence in their situation would not have continued to rely on the representations not yet discovered. Consequently, we hold that under the authorities above discussed, the trial court could not properly render judgment for the bank on its main claim on the theory that defendants' claim of fraud was waived as a matter of law and that the original transaction was ratified by execution of the renewal notes.

Neither can we presume that the judge made a finding of fact on the unsubmitted issue of materiality of the false representations which were discovered because the court did not render judgment on the verdict. In effect the court rendered judgment for the bank on the main claim notwithstanding the verdict. Consequently, no presumption can apply that the judge made a fact finding in support of the judgment. *Rodriguez v. Higginbotham-Bailey-Logan Co.*, 138 Tex. 476, 160 S.W.2d 234 (1942). We hold, therefore, that the court erred in rendering judgment for the bank on the notes.

The bank seeks also to uphold the judgment on the ground of limitation. We hold, however, that limitation is not available to defeat the defense of fraud on the main claim because limitation does not apply to fraud pleaded defensively to defeat liability on an obligation induced by fraud. *Mason v. Peterson*, 250 S.W. 142, 146–47 (Tex.Com.App.1923, holdings approved); *Finger v. Morris*, 468 S.W.2d 572 (Tex.Civ. App.—Houston [14th Dist.] 1971, writ ref'd n. r. e.); *Reynolds-Southwestern Corp. v. Dresser Industries, Inc.*, 438 S.W.2d 135 (Tex.Civ.App.—Houston [14th Dist.] 1969, writ ref'd n. r. e.); *Payne v. Beaumont*, 245 S.W. 94 (Tex.Civ.App.—San Antonio 1922, writ ref'd). Similarly, limitation does not apply to a plea of recoupment based on a demand arising from the same transaction as the plaintiff's claim and predicated on a factor that would vitiate the contract sued on as of the time the contract was made. *Southern Pac. Co. v. Porter*, 160 Tex. 329, 331 S.W.2d 42, 45 (1960). Designation of a recoupment claim as an "offset," as in this case, makes no difference. *Garza v. Allied Finance Co.*, 566 S.W.2d 57, 63 (Tex.Civ. App.—Corpus Christi 1978, no writ). Consequently, we hold that to the extent that the bank's present claim is based on the original indebtedness incurred at the time the representations were made, it must be reduced by the amount of the damages resulting from the false representations. Since the jury found that the market value of the restaurant equipment at the time of the sale was $5,000, as compared to the price of $18,500 which defendants paid for it, defendants' damages amounted to the difference, or $13,500. This amount is well

in excess of the $5,331.23 which the court found to be due on the renewal note of January 24, 1972. The court erred, therefore, in rendering judgment for the bank on the original obligation and should have limited defendants' liability on the notes to amounts advanced to defendants in subsequent transactions not affected by the fraud.

### 2. Fraud as a Basis for Counterclaim

■ The bank's plea of limitation stands on a different footing with respect to defendants' counterclaim. Insofar as defendants seek affirmative recovery on their counterclaim for actual and exemplary damages, the bank may appropriately interpose its plea of limitation. *Southern Pac. Co. v. Porter*, 160 Tex. 329, 331 S.W.2d 42, 45 (1960); *Swaim v. Int'l Harvester Co.*, 505 S.W.2d 634, 637–38 (Tex.Civ.App.—Fort Worth 1974, writ ref'd n. r. e.). The bank alleged in its supplemental petition that the matter alleged in defendants' counterclaim was known to defendants more than two years before their first pleading of fraud or should have been discovered by that time in the exercise of reasonable diligence.

Defendants contend that the applicable limitation period is four years rather than two because their counterclaim is based on a claim for rescission of the notes signed by them. On this ground defendants assert that their counterclaim is governed by the period applicable to claims for rescission of written instruments. In this connection, they cite *LaFleaur v. Kinard*, 161 S.W.2d 144 (Tex.Civ.App.—Beaumont 1942, writ ref'd w. o. m.), which was a suit to cancel a royalty conveyance on the ground of fraud.

■ We do not regard defendants' counterclaim in this suit as a claim for rescission. To rescind the entire transaction, including the purchase of the equipment, defendants would have had to make the former owner a party, since the bank had only a security interest. The counterclaim alleges that defendants were damaged in the sum of $31,626.22, which they alleged to be the difference between what they parted with "in an attempt to maintain the agreements in question" and the value of what they actually received. This allegation affirms the contract and asserts damages measured by defendants' loss if the transaction is allowed to stand, rather than a claim for rescission and restitution. They also allege exemplary damages in the amount of $125,000. We hold that this pleading states a common-law claim for damages for fraud or deceit and is governed by the two-year statute of limitation, Tex.Rev.Civ.Stat.Ann. art. 5526 (Vernon 1958). *Wise v. Anderson*, 163 Tex. 608, 359 S.W.2d 876, 879 (1962).

■ Accordingly, we must examine the jury's findings to determine whether they support the bank's plea of limitation. These findings are that prior to August 22, 1973 (two years before defendants filed their counterclaim), defendant Bodovsky became aware of facts that would have led a reasonable man to make an investigation on his own concerning the alleged representations and concealment (issue number seven);[2] that Bodovsky and Everson had a reasonable time to make an investigation before that date (issue number eight); and that a reasonable investigation by Bodovsky and Everson would have revealed the falsity of the representations or the existence of the matters concealed (issue number nine).

---

2. The trial court apparently took the view that Bodovsky's knowledge was chargeable to Everson as a partner, since the judgment recites that defendants associated themselves in the restaurant business as a partnership which was not shown to have been dissolved, although Everson left the active management of the restaurant in January 1972. Defendants do not challenge this finding by a separate point, although they suggest that the evidence shows that the partnership was dissolved before August 22, 1973. In the absence of any objection to the court's failure to submit an issue inquiring when the partnership was dissolved, the trial court was authorized to make an express finding on the omitted issue. Rule 279, Tex.R. Civ.P.; *Rodriguez v. Higginbotham-Bailey-Logan Co.*, 172 S.W.2d 991 (Tex.Civ.App.—San Antonio 1943, writ ref'd). We need not determine whether defendants are required to raise the lack of evidence by a separate point, since our review of the evidence discloses sufficient evidence to support this finding.

Defendants do not attack these findings for insufficiency of evidence. They assert, rather, that they are evidentiary, inconclusive, and irrelevant in view of the jury's finding in answer to issue number three. In response to issue number three, the jury found that before the restaurant equipment was purchased on October 8, 1969, there had been established a confidential relationship between the officers of the bank and the defendants regarding defendants' purchase of the equipment. Defendants argue that in view of this confidential relationship, limitation did not begin to run until actual discovery of the fraud. In support of this argument, defendants cite, among other authorities, *Courseview, Inc. v. Phillips Pet. Co.*, 158 Tex. 397, 312 S.W.2d 197 (1957).

We conclude that *Courseview* supports the judgment of the trial court sustaining the bank's plea of limitation rather than the argument advanced by defendants. In that case the supreme court said that the existence of a relationship of trust and confidence does not change the rule that diligence in discovering fraud is required, but that such a relationship affects application of the rule and is one of the circumstances to be considered in determining whether the fraud might have been discovered in the exercise of reasonable diligence. This view was reaffirmed in *International Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 579–80 (Tex.1963). Under these authorities, the existence of a confidential relationship is an evidentiary matter bearing on the ultimate issue of whether under all the circumstances a person of ordinary prudence would have made an investigation that would have revealed the fraud. Accordingly, in answering issue number seven, the jury could properly take into consideration any confidential relationship shown by the evidence in determining whether a reasonable man would have made an investigation after discovering the facts of which

Bodovsky was aware more than two years before the counterclaim was filed. These issues in themselves, however, are not evidentiary, irrelevant, or inconclusive. Any finding of a confidential relationship between the parties, therefore, would not be controlling on the limitation question.

Moreover, the finding of a confidential relationship could not be controlling because of the difference in the dates inquired about in the issues. The jury found in answer to issue number three that a confidential relationship existed on October 8, 1969, but issue number seven inquired whether Bodovsky became aware before August 22, 1973, of facts that would have led a reasonable person to make an investigation concerning the alleged misrepresentations.[3] Any confidential relationship found to have existed in October 1969, however, would not be conclusive on the issue of whether a reasonable person would have continued to rely on it as late as August 1973, after the restaurant business had fallen into difficulties. The jury might well have concluded that any presumption of continuation of the relationship had been rebutted. Consequently, we hold that the trial court did not err in rendering judgment based on the jury's findings that more than two years before the counterclaim was filed, Bodovsky became aware of facts which would have led a reasonable person to make an investigation that would have led to discovery of the fraud.

We need not pass on the question of whether the judge should have instructed the jury expressly in connection with issue number seven that in determining whether a reasonable person would have made an investigation, any confidential relationship between the parties should have been considered. The record fails to show that defendants requested such an instruction or objected to the issue on that ground,

---

**3.** Actually, the record shows that issue number three was not submitted in connection with the bank's plea of limitation, but rather as an element of defendants' claim of fraudulent concealment. Defendants alleged that because of such a relationship at the time of their pur-

chase of the equipment, the bank had a duty to disclose information material to their purchase. Defendants seek to apply this finding to the limitation question by asserting a presumption that the relationship, once established, continued until the bank filed this suit.

and neither do they urge here that the failure to give such an instruction requires a new trial.

The judgment sustaining the bank's plea of limitation is supported also by the jury's affirmative answer to issue number thirteen, as follows:

Prior to August 22, 1973 did Bodovsky and Everson discover the existence of the facts concealed found by you in answer to Special Issue No. 4 or that any representation found by you in answer to Special Issue Nos. 1 and 2 was not true?

This issue concerns defendants' actual discovery of the fraud, as distinguished from knowledge of facts that should have led them to investigate, and relates to both Bodovsky and Everson.

Defendants attack this finding also on the ground that it is evidentiary, irrelevant, and inconclusive. They state that they objected to the issue in the trial court, but none of their points complain of any ruling of the judge on such objections. Neither do defendants seek a new trial because of any defect in the issue. Instead, they argue that the burden was on the bank to request proper issues submitting its limitation defense, and they insist that the trial court should have disregarded the jury's answer and rendered judgment in their favor on the counterclaim. In particular, defendants contend that issue number thirteen cannot be accepted as a basis for the judgment because it is phrased in the disjunctive, so that the jury's answer can mean either that defendants discovered the facts found to have been concealed in answer to issue number four, or that they discovered the falsity of any one of the various representations inquired about in the first two issues. Defendants suggest that the jury might have concluded that defendants discovered the existence of the facts concealed, but did not discover the falsity of any of the various representations found by the jury. They argue that discovery of some but not all of the fraudulent representations or concealments does not necessarily start limitation running.

We hold that the trial court did not err in refusing to disregard this finding. Even though it may have been subject to objection because of its disjunctive form and its evidentiary character, no timely objection on either of those grounds is before us, and the jury's answer cannot be disregarded on those grounds. Defendants' remedy for such defects was to make their objections before submission to the jury, and then, if such objections should be overruled, to assign such rulings here as grounds for a new trial.

This rule is well established by a long line of cases, many of which were reviewed by the supreme court in *Allen v. American Nat'l Ins. Co.*, 380 S.W.2d 604 (Tex.1964), an analogous case on its facts. In that case a life insurance company defended an action on a policy on the ground that the insured had made false representations concerning his health. In answer to one of the issues submitted, the jury found that the insured "knew or should have known" that one of the representations made in the application for insurance was false. The trial court rendered judgment for the beneficiary and the insurer appealed, contending that the finding in question required a judgment in its favor. The beneficiary contended that judgment was properly rendered in her favor because the issue included the phrase "or should have known," which was improper in view of the rule that a representation must have been known to be false in order to defeat liability on the policy. The supreme court recognized that the issue was erroneous in this respect, but nevertheless reversed and rendered judgment for the insurer, holding that under rule 274 of the Texas Rules of Civil Procedure, the beneficiary had waived the defect by failing to object. The court went on to say that the rule of waiver is operative regardless of whether the trial court awards or refuses to award judgment on an asserted claim or defense of which the issue itself is a ground or constitutes a component element. *Id.*, at 609.

In the present case, issue number thirteen, though possibly defective, is not

immaterial. Unquestionably, it was submitted in connection with the bank's plea of limitation and gave notice to defendants that an affirmative answer might be taken as a basis for a judgment sustaining that plea. Consequently, defendants were required to point out any defect by a timely objection to the issue. They could not wait until after verdict and then assert that the finding should be disregarded in rendering judgment. *Lanphier Const. Co. v. Fowco Const. Co.*, 523 S.W.2d 29, 43 (Tex.Civ.App. —Corpus Christi 1975, writ ref'd n. r. e.); *Panhandle & S. F. Ry. v. Friend*, 91 S.W.2d 922, 930 (Tex.Civ.App.—Austin 1936, writ ref'd). A complaint that an issue is evidentiary rather than ultimate is among those that are waived by failure to make a timely objection, and in the absence of such an objection, an issue subject to such a complaint may form the basis of a judgment. *Weingarten, Inc. v. Scott*, 456 S.W.2d 266, 271 (Tex.Civ.App.—Houston [14th Dist.] 1970, no writ). Although in the cases cited the courts rested the waiver on the complaining party's failure to make a timely objection, the same rule, in our opinion, applies if an objection is made but is not brought forward on appeal as a ground for a new trial.

■ We conclude that defendants are in no position to assert that the answer to issue number thirteen does not constitute a finding that all of the false representations found by the jury were discovered more than two years before the counterclaim was filed and, therefore, that this finding is evidentiary and inconclusive.

■ Though possibly incomplete, the issue was obviously referable to the bank's plea of limitation and therefore gave notice to defendants that an affirmative answer might be taken as the basis of a judgment on that plea. If followed by an issue concerning materiality of the facts so discovered, affirmative answers to both would clearly have established the bank's defense of limitations. At least, issue number thirteen was one component of this defense and was necessarily referable to it. In the absence of any request for submission of the additional component or any objection to the court's failure to submit it, the trial court must be deemed to have found the unsubmitted component in favor of the judgment if there is evidence to support such a finding. Rule 279, Tex.R.Civ.P.; *Kirk v. Standard Life & Acc. Ins. Co.*, 475 S.W.2d 570, 572 (Tex.1972); *Rogers v. Ellsworth*, 501 S.W.2d 756, 757 (Tex.Civ.App.— Houston [14th Dist.] 1973, writ ref'd n. r. e.). After reviewing the record, we are unable to say that there is no evidence to support such a deemed finding, and, indeed, defendants do not contend that there is no such evidence.

### Judgment

For the reasons stated, we hold that the trial court erred in rendering judgment for the bank on its main claim on the notes, but we conclude that the court was correct in sustaining the bank's plea of limitation with respect to the counterclaim. Accordingly, the judgment is affirmed with respect to the counterclaim, and, with respect to the main claim, the judgment is reversed and the cause is remanded with instructions to render judgment for the bank only to the extent of indebtedness incurred for advances and overdrafts subsequent to October 8, 1969.

No complaint is made here of defendants' recovery of $3,500 for the bank's failure to conduct the sale of the equipment in a normally commercial manner. The trial court allowed this amount as a credit on plaintiff's recovery on the notes. In rendering judgment on remand, the court is instructed to award defendants recovery of this amount, but to offset it, to the extent it may properly be offset, against any recovery awarded to the bank. Costs of this appeal and of the trial court are assessed against the bank.

Affirmed in part, and reversed and remanded in part, with instructions.

### ON MOTION FOR REHEARING

Defendants raise in their motion for rehearing several questions deserving fur-

ther discussion. They assert that we erred in holding that the issues disregarded by the trial judge related only to the theory of waiver. These issues, they insist, were also components of and were referable to plaintiff's theory of limitation, and defendants argue that we cannot properly deem any issues found in favor of a judgment rendered in disregard of any jury findings.

We adhere to the views stated in our original opinion. We did not consider the disregarded findings as bearing on the issue of limitation because they did not inquire concerning defendant's knowledge on August 22, 1973, two years before defendants filed their counterclaim alleging fraud. Rather, those issues inquired concerning defendants' knowledge on certain dates in 1970, 1971, and 1972, when the renewal notes were signed. Those dates would be significant only on the theory of waiver or ratification. The answers, if allowed to stand, would not have negated the defense of limitation because they did not establish that defendants had no knowledge of the fraud on August 22, 1973, two years before the counterclaim was filed. We recognize that if the issues in question had been answered in plaintiff's favor, they might have affected the period of limitation because if defendants had known of the fraud in 1970, 1971, and 1972, limitation would have begun to run even before August 22, 1973. In that event, however, knowledge of the fraud at the time of execution of the renewal notes would have established the defense of waiver or ratification, and limitation would have been immaterial. Consequently, we do not view the disregarded issues as bearing on limitation as a defense to the counterclaim.

Defendants further contend that we erred in failing to hold that the trial court erred in disregarding the answers to the waiver issues which were favorable to defendants, and in rendering judgment notwithstanding those answers. We held that the court erred in rendering judgment on the main claim notwithstanding those answers because, even if they were properly disregarded, the element of materiality was not submitted, and no finding on the omit-ted issue could be deemed in support of a judgment notwithstanding the jury's answers. Thus, in our view of the case, plaintiff failed to establish waiver and it was not necessary to consider whether there was evidence to support the disregarded answers.

In our original opinion we did not discuss the bearing of the waiver issues on the counterclaim because if waiver of the fraud was not established with respect to the main claim, neither was it established with respect to the counterclaim. We did not hold that the judgment against defendant on their counterclaim can be supported on the theory of waiver or on the action of the judge in disregarding some of the answers to the waiver issues. We hold that the judgment on the counterclaim is supported by the independent defense of limitation, as submitted in issues number seven, eight, nine, and thirteen, which inquired about defendants' knowledge at the crucial time with respect to limitation, namely, August 22, 1973. Consequently, we still need not consider whether the court erred in disregarding any of the answers to the waiver issues.

Since the judgment against defendants on their counterclaim is based on the jury's answers to the limitation issues, rather than on the court's action in disregarding some of the answers to the waiver issues, we regard that judgment as one on the verdict rather than a judgment notwithstanding the jury's answers. Consequently, if issues number seven, eight, nine and thirteen did not submit all components of the limitation defense, we must deem any unsubmitted component found in support of the judgment in the absence of any objection to the issues brought forward here as ground for a new trial, as we held in our opinion.

Defendants now call our attention to the objections they made to the limitation issues in the trial court and have moved for leave to supplement the transcript by bringing forward those objections. We do not regard the objections as material at this stage of the litigation. None of the points

on this appeal complain of the trial court's rulings on the objections, and it is too late to consider whether a new trial should be granted on this ground. Our former opinion was not based on defendants' failure to object to the limitation issues. We held, rather, that in the absence of any contention on appeal that a new trial should be granted because of any defects pointed out by such objections, we could not reverse the trial court's judgment and render judgment in defendants' favor on the theory that these issues did not submit all the elements of the limitation defense.

Defendants' motion for rehearing and motion to file supplemental transcript are overruled.