Lorene PARCHMAN, Appellant,

v.

UNITED LIBERTY LIFE INSURANCE CO., Appellee.

No. A3021.

Court of Appeals of Texas, Houston (14 Dist.).

July 22, 1982.

John L. Moore, Stephenson, Moore & Associates, Bellaire, for appellant.

F. Scott McCown, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and JUNELL and PRICE, JJ.

PRICE, Justice.

This is an appeal from a summary judgment entered in favor of appellee, United Liberty Life Insurance Company, denying recovery on a $60,000.00 life insurance policy. The insured committed suicide and the court held that the two year suicide exclusion applied. The appellant, Lorene Parchman, is the mother of the decedent and the beneficiary of the policy. The principal issues on appeal are the determination of the date on which the two years suicide risk exclusion begins to run and whether an examination by a registered nurse constitutes a medical examination under the policy. We affirm the judgment of the trial court below.

Justin Parchman applied for a $60,000.00 life insurance policy through appellee on July 20, 1977. On that day, he paid the first month's premium and was issued a conditional receipt. The application provided that if the first premium was fully paid with the application, the liability of the company would be as specified in the receipt. Omitting certain contingencies not applicable to this case, the receipt stated the policy would become effective on either (a) the date of the completion of part one of the application or (b) on the date of completion of all required medical examinations, whichever was the later date.

At the time of his application, Justin Parchman was told by appellee that the face amount of his requested policy was in excess of the amount of insurance appellee would issue to a man of his age without a medical examination and that an examination would be arranged. On August 6, 1977, as arranged by appellee, Mr. Parchman was examined by a medical examiner, a registered nurse employed by Portamedic, an approved medical examiner for approximately twelve hundred insurance companies. She solicited a medical history, and also made a physical examination of Mr. Parchman, obtaining height, weight, chest and abdomen measurements, blood pressure readings, pulse and a urine specimen in addition to a general assessment of his appearance. This information was then forwarded to appellee for review by its underwriters, who work under the supervision of a licensed physician, for evaluation of Mr. Parchman's insurability.

Mr. Parchman's application was approved and his policy delivered to him on November 17, 1977, with a policy date of October 10, 1977. The policy excluded suicide as an assumed risk for two years from the policy date and provided a reduced benefit of the return of all premiums paid if death resulted from suicide within such period. The policy also contained a provision stating the policy would become incontestable after it had been in force during the lifetime of the insured for two years from the policy date. On August 3, 1979, Justin Parchman died as a result of a self-inflicted gunshot wound which the coroner of Harris County ruled as suicide. Appellant does not dispute the evidence and finding of death by suicide.

On September 4, 1979, the appellant filed a claim for death benefits. This claim was denied by the insurance company by letter dated November 7, 1979, on the basis of the two year suicide exclusion clause. At an indeterminable time, appellee tendered to the estate of Justin Parchman the premiums paid. Therefore, appellee maintains compliance with terms and conditions of the policy by the return of the premiums paid as a reduced benefit under the two year suicide exclusion clause.

Appellant, in her first point of error, claims that appellee, by writing a letter denying coverage under the two year suicide exclusion and by filing an answer raising a defense on the basis of the two year suicide exclusion policy condition, waived the insurer's right to pay a reduced benefit under the contract. Initially, we point out that appellant's first point of error on waiver was not timely presented in the trial court below at the summary judgment hearing. At the time of the summary judgment hearing on September 21, 1981, there was no pleading or contention raised on waiver. It was first presented and argued in a motion for a new trial that appellee could not rely upon the suicide exclusion and had waived its right to do so by "denying coverage." When a motion for a new trial is filed after the summary judgment has been granted, the district court may consider only the record as it existed prior to granting the summary judgment. Tex. R.Civ.P. 166—A. *See also Oaxaca v. R.D. Lowman,* 297 S.W.2d 729, 732 (Tex.Civ.App. —El Paso 1956, writ ref'd n.r.e.). Appellant, having raised no issue of waiver by either pleading or evidence at the summary judgment hearing, as it was his burden to do, is not entitled to raise the issue of waiver on appeal.

Even if the issue of waiver could now be raised by appellant, it is without merit. Appellant urges that the two denials contained in the letter and the trial pleading amount to a complete denial of coverage under the policy and therefore constitute a waiver of the condition of the policy. He relies on *Ford v. State Farm Mutual Automobile Ins. Co.,* 550 S.W.2d 663 (Tex.1977) for this proposition. We do not agree with appellant's contention and do not find *Ford v. State Farm Mutual Automobile Ins. Co., supra,* to be applicable to this case. We do not view appellee's letter and trial pleadings as constituting a complete denial of the policy. It is undisputed the appellee paid to appellant the premiums which had been paid by the insured as provided for in the reduced benefits section of the policy. There is no contention that the reduced benefits section is not a valid provision, and it is expressly authorized by Tex. Ins.Code Ann. art. 3.45 § 3 (Vernon 1981). Appellee has consistently taken the position that suicide within two years was a risk not assumed by the company and we do not believe that position constitutes a waiver. It was a risk not assumed, and the insurance company did not otherwise deny the policy.

Appellee further urges in support of his waiver argument that this court consider the effect of the incontestability clause; specifically appellant asserts that an insurer waives the conditions of the policy when it completely denies coverage and then later attempts to rely on the conditions of the contract previously denied as a basis for not paying the claim. The appellant contends that the incontestability clause became effective on July 20, 1977, the date the deceased applied for the policy. Therefore,

appellant argues, on the date Justin Parchman died the incontestability clause had been in effect for over two years. As a result, appellant maintains that the incontestability clause conflicted with the suicide clause thereby creating an ambiguity.

Tex.Ins.Code Ann. art. 3.44 (Vernon 1981) states that a policy shall contain a provision which substantially provides that a policy shall be incontestable after it has been in force during the lifetime of the insured for two years from its date, except for non-payment of premiums. The statute does not specify whether the policy date or the effective date will be considered *its* date. This creates an ambiguity which is to be construed against the insurer. *Trahan v. Southland Life Insurance Co.,* 155 Tex. 548, 289 S.W.2d 753 (1956).

■ The United Liberty policy in question provided that the policy would be incontestable after it had been in force for two years from the "policy date." The "policy date" in question was October 10, 1977, but the "effective date" was either July 20, 1977, or August 6, 1977, depending on whether a medical examination was required and completed. An insurance company cannot place a more onerous incontestable clause in the policy than the one prescribed by statute. *American National Ins. Co. v. Briggs,* 156 S.W. 909 (Tex.Crim.App.—Dallas 1913, writ ref'd). An insurer may provide a shorter period of incontestability than the two years specified in the statute. *Southern Union Life Ins. Co. v. White,* 188 S.W. 266 (Tex.Civ.App.—Austin 1916, writ ref'd). Using the policy date (October 10, 1977) as the date the incontestable clause begins to run provides for a longer period of incontestability than using the effective date (July 20, 1977 or August 6, 1977). Therefore, the policy's incontestable clause is more onerous than the one prescribed by the statute so the statute will prevail and the policy date in the incontestability clause will be construed to mean the effective date. This simply means in our case that the two year incontestability period began running on the effective date rather than October 10, 1977 (policy date).

■ Suicide, however, may still be interposed as a defense even after the expiration of the time fixed by the incontestable clause, when the policy also contains a clause limiting liability in the event of suicide within a specified time. *Southwestern Life Ins. Co. v. Houston,* 121 S.W.2d 619 (Tex.Civ.App.—Fort Worth 1938, writ ref'd). In the instant case the parties have agreed to a state of conditions. The insurer would pay and not contest after the set period, and that promise was qualified by the further condition and provision that if death ensued from suicide within another set period, the insurer's liability would be confined to an amount equal to the sum previously paid in premiums. Moreover, even if waiver could be found in the instant case, the Texas Supreme Court has held that:

> "Whereas waiver and estoppel may operate to avoid forfeiture of a policy and may prevent an insurance company from avoiding payment because of the failure on the part of the insured to comply with some requirement of the policy, waiver and estoppel cannot enlarge the risks covered by a policy and cannot be used to create a new and different contract with respect to the risk covered and the insurance extended."

*The Minnesota Mutual Life Ins. Co. v. Morse,* 487 S.W.2d 317, 320 (Tex.1972). *See also: Farmers Texas County Mutual Ins. Co. v. Wilkinson,* 601 S.W.2d 520 (Tex.Civ. App.—Austin 1980, writ ref'd n.r.e.). Furthermore, the incontestable and suicide clauses are separate and distinct and the latter is an exception to the former. *Southwestern Life Ins. Co. v. Houston, supra.* We do not find the suicide and incontestable clauses to be in conflict in the policy in question, thereby creating an ambiguity that would be interpreted against the insurer. Actually, in view of our holding on appellant's second point of error, it does not matter in the instant case whether the two year suicide exclusion begins on "policy date" or "effective date" since both dates are within the two year suicide exclusionary period. The insurance company contends

"policy date" was a special contract term used in the suicide exclusion clause to mean October 10, 1977, the actual policy date. Alternatively, the company claims the suicide exclusion began on the "effective date", which was August 6, 1977, when the required medical examination was completed. We think the better reasoning is that the two year suicide exclusion period began on the effective date of the policy. We hold that the effective date of this policy was August 6, 1977. Thus, both the two year incontestability clause and the two year suicide exclusion clause began on the same effective date of the policy.

In her second point of error, appellant contends that the trial court erred in finding as a matter of law that a medical examination by a registered nurse representing appellee suffices as a medical examination as that term was used in the conditional receipt for life insurance. Therefore, appellant argues that the life insurance became effective not on August 6, 1977, the date of the medical examination, but on July 20, 1977, the date the conditional receipt was issued to Justin Parchman.

Appellant asserts that the medical examination of Justin Parchman was insufficient because it consisted of medical history and because it was not conducted by a physician, citing *United Founders Life Ins. Co. v. Carey,* 363 S.W.2d 236 (Tex.1962). That case defined a medical examination to mean a physical examination as distinguished from a medical history investigation. In our case, however, the registered nurse performed a physical examination and lab tests in additional to obtaining a medical history. The Texas Supreme Court further stated that insurance is to be effective upon completion of the medical examination if in the opinion of the *authorized officers* the applicant is insurable and acceptable rather than upon acceptance of the application or upon issuance or delivery of a policy. *United Founders Life Ins. Co. v. Carey, supra* at 242. Appellant contends this should be construed to mean the physical examination must be performed by a licensed physician who makes a medical diagnosis at that time. No other authority is cited for this proposi-tion. The Texas Supreme Court in *Carey* did not hold that a required medical examination must be performed by a licensed physician and neither do we.

In the instant case, the medical examination was conducted by a registered nurse specifically approved of as a medical examiner and under the supervision of a physician. The registered nurse in this instance merely performed a medical examination and forwarded the data to the home office for a decision regarding insurability. She did not offer any diagnosis or treatment to the insurer. We hold that the August 6, 1977, examination conducted by the registered nurse was a medical examination under the policy and that the effective date of the policy in question was August 6, 1977. The insured committed suicide within the two years of the effective date so the trial court properly ruled that the two year suicide exclusion applied. Appellant's second point of error is overruled.

The judgment of the trial court is affirmed.