KORAL INDUSTRIES, INC., Appellant,

v.

SECURITY-CONNECTICUT LIFE
INSURANCE COMPANY,
Appellee.

No. 05–88–01348–CV.

Court of Appeals of Texas,
Dallas.

March 23, 1990.

Rehearing Denied April 25, 1990.

J. Kent Davenport, Leonard A. Epstein, Dallas, for appellant.

Robert W. Cantner, Dallas, Joe R. Greenhill, Austin, for appellee.

Before WHITHAM, ROWE and WHITTINGTON, JJ.

OPINION

ROWE, Justice.

Koral Industries, Inc. contends on appeal that the jury findings and the applicable law entitle it to a more favorable judgment than that rendered by the trial court. Koral brought suit as the beneficiary of a life insurance policy issued by Security–Connecticut Life Insurance Company. The judgment awarded Koral the face amount of policy benefits, statutory penalties, post-judgment interest, attorney's fees, and actual damages proximately caused by settlement delay. In addition, however, Koral had sought other damages based upon breach of a duty of good faith and fair dealing, violation of the Deceptive Trade Practices Act (DTPA), and violation of the Insurance Code. The trial court disallowed these damages. Security–Connecticut contends by cross-appeal that Koral is entitled to no money damages. At trial, Security–Connecticut had asserted fraudulent inducement as a defense and had counterclaimed for a declaratory judgment rescinding the policy. We agree with Security–Connecticut's contentions that the jury findings effectively rescind the policy. Accordingly, we reverse the judgment of the trial court and render a take-nothing judgment against Koral. Further, we affirm that part of the trial court's judgment denying Security–Connecticut's request for attorney's fees.

In 1984, Koral sought to obtain a new key-man life insurance policy on the life of Lewis Lindsey, one of Koral's two key employees. Koral desired to replace its existing policy on Lindsey's life with a policy that offered lower premium rates. Pursuant to this desire, its insurance agent, Bill Cunningham, contacted Julie Hazard at Special Risk Underwriters, Inc., Security–Connecticut's marketing representative in the Dallas area. Finding that Security–Connecticut's rates were lower than those of Koral's then current insurer, Cunningham obtained Security–Connecticut application forms from Special Risk.

The record shows that Lindsey omitted several items of information concerning his medical history when he responded to the

questions contained in the application forms.[1] Later investigation determined that Lindsey had not disclosed that he had been hospitalized in 1981, 1982, and 1983. He also failed to disclose that he had received counseling and treatment regarding depression and the excessive use of alcohol. There was conflicting evidence concerning the question of whether Lindsey's responses concerning cigarette smoking were truthful. Although Lindsey also failed to disclose that he had been treated for anxiety, Security–Connecticut was made aware of such treatment by information provided by Lindsey's attending physician. Security–Connecticut also learned from a reporting agency called the Medical Information Bureau that Lindsey had been treated for some kind of mental or nervous disorder during a two-year period from 1976 to 1978. Lindsey truthfully disclosed treatment for high blood pressure and hemorrhoids.

Security–Connecticut issued a $1,000,000 insurance policy on the life of Lindsey. Koral was the beneficiary. Koral allowed its previous insurance policy on Lindsey's life to lapse. Lindsey died in 1986, and Koral submitted a claim for payment of the policy proceeds. Security–Connecticut hired Roy Middleton of General American Life Insurance Company to investigate the claim. General American was a reinsurer on the policy and was liable for 13 percent of the risk. Middleton's investigation led to discovery of Lindsey's omissions and misrepresentations. Based on the omissions and misrepresentations that were al-

legedly material to Security–Connecticut's acceptance of the risk, Security–Connecticut notified Koral that the policy was null and void, refused to pay the policy proceeds, and tendered a refund of the premiums paid with interest from the date of Lindsey's death. Koral returned the check for refund of the premiums and demanded payment of the policy proceeds. Koral subsequently filed this lawsuit.

A number of questions were submitted to the jury. The trial court disregarded a number of the jury's answers. Because resolution of this appeal turns on the effect to be given to the jury's answers and because frequent reference to the questions and answers will be necessary, we quote the relevant questions and corresponding answers:

QUESTION NO. 1

Do you find from a preponderance of the evidence that at the time SECURITY–CONNECTICUT denied the claim made under the policy issued on the life of Lewis Lindsey, SECURITY–CONNECTICUT had no reasonable basis for denying the claim, or, SECURITY–CONNECTICUT failed to determine whether there was any reasonable basis for its denial of the claim?

Check one under a. and check one under b.:

a–1. had no reasonable basis: X

a–2. had a reasonable basis:

b–1. failed to determine: X

b–2. did determine:

---

1. Testimony at trial indicated that both Cunningham and Hazard filled out, on Lindsey's behalf, a Part I of the Security–Connecticut application by writing down Lindsey's responses to the questions contained on Part I. Thus, there are two Part I applications, both of which were signed by Lindsey and both of which contain his responses to questions contained on the form, but one of the forms was filled out by Cunningham and the other was filled out by Hazard. Although both forms are contained in the appellate record, the application taken by Cunningham is found only as part of the file of an investigator hired by Security–Connecticut. That application was apparently marked up by the investigator by circling certain numbers, words, and phrases in order to indicate questions that were not truthfully answered by Lind-

sey and to indicate what some of the responses should have been. Cunningham's testimony at trial established the answers that were in fact given by Lindsey, as well as the information that was omitted. To the extent that the investigator's file copy of the Part I application taken by Cunningham is inconsistent with Cunningham's testimony and the application taken by Hazard, we have determined that we cannot consider the inconsistent circled material found on the investigator's file copy as evidence of the *original* application taken by Cunningham. (The demand letter that was eventually sent to Security–Connecticut on Koral's behalf contained a recitation of the facts and circumstances which was also consistent with Cunningham's testimony and with the information in the application taken by Hazard.)

If you have checked either a–1 or b–1 or both, then answer Question No. 2; otherwise, do not answer Question No. 2.

QUESTION NO. 2

Do you find from a preponderance of the evidence that SECURITY–CONNECTICUT's conduct inquired about in Question No. 1 proximately caused damage to KORAL?

Answer "yes" or "no".

Answer: YES

QUESTION NO. 3

What sum of money, if paid now in cash, would compensate KORAL for its damage, if any, which resulted from the occurrence in question?

Answer in dollars and cents, if any, or none.

Answer: $ 1,000,000.00

If you have answered Question No. 2 "yes", then answer Question No. 4; otherwise, do not answer Question No. 4.

QUESTION NO. 4

Do you find from a preponderance of the evidence that SECURITY–CONNECTICUT's conduct inquired about in Question No. 1, was done willfully, wantonly, with a conscious indifference to KORAL's rights, or with an intent to harm KORAL?

You are instructed that "conscious indifference" means, in the face of an impending harm to another party, to care not about the consequences of the act which may ultimately lead to the harm.

Answer "yes" or "no".

Answer: NO

. . . .

QUESTION NO. 6

Do you find from a preponderance of the evidence that:

a. at the time SECURITY–CONNECTICUT denied the claim under the Lindsey policy, its liability under the Lindsey policy had become reasonably clear to SECURITY–CONNECTICUT?

Answer "yes" or "no".

Answer: YES

b. if so, that SECURITY–CONNECTICUT failed to settle the claim under the Lindsey policy promptly, fairly and equitably?

Answer "yes" or "no".

Answer: YES

QUESTION NO. 7

Do you find from a preponderance of the evidence that:

a. SECURITY–CONNECTICUT refused to pay KORAL's claim without conducting a reasonable investigation based upon all the available information?

Answer "yes" or "no".

Answer: NO

b. if so, that SECURITY–CONNECTICUT's refusal to pay claims without conducting a reasonable investigation based upon all available information was committed or performed with such frequency as to indicate a general business practice?

Answer "yes" or "no".

Answer: NO

If you have answered both parts a. and b. of Question No. 6 "yes", or both parts a. and b. of Question No. 7 "yes", then answer Question No. 8; otherwise, do not answer Question No. 8.

QUESTION NO. 8

Do you find from a preponderance of the evidence that SECURITY–CONNECTICUT's conduct inquired about in Questions Nos. 1, 6 and/or 7 was a producing cause of damage, if any, to KORAL?

Answer "yes" or "no".

Answer: YES

QUESTION NO. 9

What sum of money, if paid now in cash, would fairly and reasonably compensate KORAL for its damages, if any, as a result of SECURITY–CONNECTICUT's conduct inquired about in Questions Nos. 6 and/or 7?

Answer in dollars and cents, if any, or none.

Answer: $ 163,851.25

QUESTION NO. 10

Do you find from a preponderance of the evidence that Lindsey made representations to SECURITY–CONNECTICUT which he knew were false when made,

material, relied upon by SECURITY-CONNECTICUT and were made by Lindsey with the intent to induce SECURITY-CONNECTICUT to issue the Lindsey policy?

You are instructed that a misrepresentation is "material" to the risk to be assumed of insuring Lindsey if the misrepresentation actually induced SECURITY-CONNECTICUT to assume the risk by issuing the Lindsey policy.
Answer "yes" or "no".

Answer: YES

QUESTION NO. 11

Do you find from a preponderance of the evidence that SECURITY-CONNECTICUT knew facts which would have caused a prudent person to inquire of said facts and would an inquiry, made with reasonable diligence, have disclosed the omissions questioned by SECURITY-CONNECTICUT made by the deceased?

You are instructed that if SECURITY-CONNECTICUT, its agents or employees, knew of any false representations or misrepresentations or knew of such facts which would put a prudent person on inquiry and such inquiry, made with reasonable diligence, would have disclosed the falsity of the statements, then SECURITY-CONNECTICUT cannot assert the false answers to avoid the policy. Further, SECURITY-CONNECTICUT waives the right to assert only those false statements, if any, of which it knew or should have known.
Answer "yes" or "no".

Answer: YES

QUESTION NO. 12

Do you find from a preponderance of the evidence that Lindsey smoked cigarettes in the twelve months prior to the date of the application, May 31, 1984?
Answer "yes" or "no".

Answer: NO

. . . .

If you have answered Questions Nos. 2 and/or 8 "yes", answer Question No. 14; otherwise, do not answer Question No. 14.

QUESTION NO. 14

Do you find that any of the acts or omissions you have found in answer to Questions Nos. 1, 6 and/or 7 were committed knowingly?

You are instructed that "knowingly" means actual awareness by SECURITY-CONNECTICUT of the falsity or deception, if any, of the acts or omissions committed; but actual awareness may be inferred where objective manifestations indicate that a person acted with actual awareness.

If you checked a–1 or b–1, then answer 14a.
If you answered "yes" to Question Nos. 6a and 6b, then answer 14b.
If you answered "yes" to Question Nos. 7a and 7b, then answer 14c.

14a. conduct inquired about in Question No. 1
Answer "yes" or "no": YES
14b. conduct inquired about in Question No. 6
Answer "yes" or "no": YES
14c. conduct inquired about in Question No. 7
Answer "yes" or "no":
If you have answered Question No. 14a, 14b and/or 14c "yes", then answer Question No. 15; otherwise, do not answer Question No. 15.

QUESTION NO. 15

What sum of money, if any, do you find should be awarded against SECURITY-CONNECTICUT as additional damages?

You are instructed that "additional damages" means an amount which you may, in your discretion, award as an example to others and as a penalty or by way of punishment or as compensation for the inconvenience and expense of litigation, except attorney's fees and court costs, in addition to any amount which may have been found by you as actual damages.
Answer in dollars and cents, if any, or none.

Answer: $ NONE ($0.00)

Based on the jury's answer to Question 11, the trial court rendered judgment in favor of Koral on the breach of contract

theory. The trial court also disregarded the answers to Questions 1, 2, 3, 6, 8, 9, and 14 because:

(1) such findings have no support in the evidence or are not supported by legally sufficient evidence of probative force, and a directed verdict for Defendant as to such matters would have been proper; and (2) such findings cannot be reconciled with the jury's answers to Questions 4, 7 and 10 to the extent that such answers contain a knowledge finding and the jury's answer to Question 10, in particular, makes any judgment for treble damages inequitable, and a reward for fraud in the inducement.

The trial court awarded damages to Koral in the amount of $1,163,851.25, plus $120,000.00 as the 12 percent statutory penalty provided under article 3.62 of the Texas Insurance Code,[2] plus attorney's fees of $85,000.00. The judgment also provided for postjudgment interest and attorney's fees in the event of an appeal. The trial court rendered judgment that Security–Connecticut take nothing on its counterclaims.

On appeal, Koral contends that the trial court erred in failing to render judgment on its causes of action for statutory violations and for breach of the duty of good faith and fair dealing. Koral argues that the trial court also erred in disregarding the jury answers discussed above. Koral's basic complaint on appeal, related to its other complaints, is that the trial court erred by failing to treble the damages awarded to Koral.

Security–Connecticut argues on appeal that the trial court properly disregarded the jury's findings. Therefore, Security–Connecticut maintains that trebling of damages was not warranted. In its cross-appeal, Security–Connecticut further contends that the trial court erred by rendering judgment in favor of Koral and that the trial court erred by not rendering judgment in favor of Security–Connecticut. Security–Connecticut also argues that the trial court erred in denying its request for attorney's fees.

We determine that disposition of both parties' appeals will be facilitated by first addressing some of the points of error raised by Security–Connecticut in its cross-appeal.

■ In its first point of error in its cross-appeal, Security–Connecticut contends that the trial court erred by denying Security–Connecticut's motion for judgment, which was based upon the jury's answer to Question 10 finding fraudulent inducement. In its third point of error, Security–Connecticut argues that the trial court erred in rendering judgment for Koral because the jury's answer to Question No. 11, finding that Security–Connecticut failed to use reasonable diligence to discover Lindsey's omissions, was immaterial.

It is settled law in Texas that an insurer may avoid a policy because of misrepresentation by the insured if five elements are pleaded and proved: (1) the making of the representation, (2) the falsity of the representation, (3) reliance on the representation by the insurer, (4) the intent to deceive on the part of the insured in making the representation, and (5) the materiality of the representation. *Mayes v. Massachusetts Mut. Life Ins. Co.*, 608 S.W.2d 612, 616 (Tex.1980). Although Question 10, which inquired about fraudulent inducement, did not exactly track the elements as set forth here, the question and its accompanying instruction did require the jury to find the essential elements of misrepresentation in order to answer the question affirmatively. The element of intent to deceive was incorporated into the question by asking if Lindsey made representations "which he knew were false when made ... and were made ... with the intent to induce SECURITY–CONNECTICUT to issue the Lindsey policy." By its "yes" answer, the jury found fraudulent inducement and misrepresentation by Lindsey sufficient to allow avoidance of the policy by Security–Connecticut, assuming that there is no other legal bar to such avoidance of the policy.

The real controversy in this case revolves around Question 11, which asked the jury if

**2.** Tex.Ins.Code Ann. art. 3.62 (Vernon 1981).

"SECURITY–CONNECTICUT knew facts which would have caused a prudent person to inquire of said facts and would an inquiry, made with reasonable diligence, have disclosed the omissions questioned by SECURITY–CONNECTICUT made by the deceased." The question and its accompanying instruction were apparently taken almost verbatim from a case relied upon by Koral. *See Republic–Vanguard Life Ins. Co. v. Walters*, 728 S.W.2d 415, 418 (Tex. App.—Houston [1st Dist.] 1987, no writ). The *Republic–Vanguard* court approved the question and instruction and affirmed a judgment against the insurer based on the jury's affirmative answer to the question, despite the jury's additional findings establishing that the insured had intentionally misrepresented material facts in his policy application and that the insurer relied on those misrepresentations in issuing the policy. Security–Connecticut argues that the *Republic–Vanguard* case was wrongly decided and is contrary to long-established Texas law.

Security–Connecticut relies on a long line of Texas cases exemplified by *Isenhower v. Bell*, 365 S.W.2d 354 (Tex.1963). In that case, the buyer of a store alleged fraud on the part of the seller regarding the store's outstanding debts. The seller argued on appeal that the trial court had erred in refusing to submit a jury question requested by the seller. The Texas Supreme Court quoted the jury question as follows: "Do you find … that the plaintiff Isenhower knew *or should have known by use of reasonable diligence*, the amount of the indebtedness owed by Bell Feed Store at the time of purchase." *Id.* at 357 (emphasis in original). In holding that the trial court correctly declined to submit the question, the supreme court stated:

> Where one has been induced to enter into a contract by fraudulent representations, the person committing the fraud cannot defeat a claim for damages based upon a plea that the party defrauded might have discovered the truth by the exercise of proper care.… An affirmative answer to the requested special issue based upon what Isenhower *should have known*

would not, therefore, have constituted a defense to the alleged fraud.

*Id.* (emphasis in original).

The rule set forth in *Isenhower* dates back at least to 1888. In a case decided then, the Texas Supreme Court found that the rule was reasonable and well sustained by authority, and stated it as follows:

> When once it is established that there has been any fraudulent misrepresentation, … by which a person has been induced to enter into a contract, it is no answer to his claim to be relieved from it to tell him that he might have known the truth by further inquiry. He has a right to retort upon his objector: "You, at least, who have stated what is untrue … for the purpose of drawing me into a contract, can not accuse me of want of caution, because I relied implicitly upon your fairness and honesty."

*Labbe v. Corbett*, 69 Tex. 503, 509, 6 S.W. 808, 811 (1888). Based on this rule, the supreme court disapproved of a jury question that was similar to the question in *Isenhower* because the question authorized a finding in favor of the person who committed fraud if the defrauded party knew *or should have known* the true facts. *Labbe*, 69 Tex. at 508–09, 6 S.W. at 811–12. The rule has been recently reaffirmed by the supreme court. *See Trenholm v. Ratcliff*, 646 S.W.2d 927, 933 (Tex.1983).

Texas courts of appeals have generally adhered to the *Isenhower* rule. In addition to stating the rule in the words used previously, courts have held that negligence is not a defense to an action based on fraud. *See, e.g., Plains Cotton Coop. Ass'n v. Wolf*, 553 S.W.2d 800, 803 (Tex.Civ.App.—Amarillo 1977, writ ref'd n.r.e.); *Robert v. Sumerour*, 543 S.W.2d 890, 892 (Tex.Civ. App.—Waco 1976, no writ). The same court that decided *Republic–Vanguard* has previously followed the *Isenhower* rule, using these words:

> It is not the rule that a person injured by the fraudulent and false representations of another is held to the exercise of diligence to suspect and discover the falsity of such statements. In the absence of knowledge to the contrary, he would

have a right to rely and act upon such statements, and certainly the wrongdoer in such a case cannot be heard to complain that the other should have disbelieved his solemn statements.

*Colvin v. Allsworth,* 627 S.W.2d 430, 431 (Tex.App.—Houston [1st Dist.] 1981, no writ); *City of Houston v. Howe & Wise,* 373 S.W.2d 781, 791 (Tex.Civ.App.—Houston [1st Dist.] 1963, writ ref'd n.r.e.).

This Court has indicated that the rule is a sound and reasonable rule because it serves to discourage fraudulent conduct. In a case in which a borrower alleged usury on the part of a lender because the lender should have known the true identity of the borrower,[3] Justice Guittard dispatched the contention in this manner:

> Plaintiff's own evidence indicates an intention by the partnership to practice deception upon the lender.... Under these circumstances the partnership, whose agent participated in the transaction, is in no position to assert that the lender should have made its own investigation to determine whether the transaction was genuine. *If a deceived party is penalized for failure to investigate, deception will often be rewarded.* Accordingly, one who makes a representation on which another relies will not be heard to say that his own representation was not worthy of belief and should not have been accepted without investigation.... On the same reasoning we hold that a borrower cannot assert a subterfuge of its own making to establish usury without proof that the lender participated in or had actual knowledge of the subterfuge.

*American Century Mortgage Investors v. Regional Center, Ltd.,* 529 S.W.2d 578, 583–84 (Tex.Civ.App.—Dallas 1975, writ ref'd n.r.e.) (citing *Isenhower,* 365 S.W.2d at 357) (emphasis added); *see also Southern States Life Ins. Co. v. Newlon,* 398 S.W.2d 622, 626 (Tex.Civ.App.—Eastland 1966, writ ref'd n.r.e.).

None of the line of cases exemplified by *Isenhower* was cited by the *Republic–Vanguard* court. That court relied primarily on a federal case that approved a jury instruction that was almost identical to the instruction used with Question 11 in this case and in the *Republic–Vanguard* case. *See Jefferson Amusement Co. v. Lincoln Nat'l Life Ins. Co.,* 409 F.2d 644, 650–51 (5th Cir.1969). The *Jefferson Amusement* court cited no Texas law in support of its approval of a jury instruction which allowed a finding of waiver of fraud if the insurer knew *or should have known* of the insured's misrepresentations.[4] The only authority cited as supportive of the jury instruction was another federal case. *See Apperson v. United States Fidelity and Guar. Co.,* 318 F.2d 438, 441 (5th Cir.1963). Although it is unclear which state's law was purportedly being applied by the *Apperson* court,[5] it is clear that no Texas authority was cited by that court. *See id.* at 441 & nn. 3–5.

Nevertheless, Koral maintains that *Republic–Vanguard* is in accordance with ex-

---

**3.** The interest rate ceiling was higher if the borrower was a corporation. The purported borrower was a corporation, but the real borrower was a partnership. *See American Century Mortgage Investors v. Regional Center, Ltd.,* 529 S.W.2d 578, 580 & n. 1 (Tex.Civ.App.—Dallas 1975, writ ref'd n.r.e.).

**4.** In another part of the opinion, the *Jefferson Amusement* court did cite a Texas case in discussing the issue of the insurer's reliance upon the insured's representations. *See* 409 F.2d at 648–49 (citing *Dossett v. Franklin Life Ins. Co.,* 276 S.W. 1097 (Tex.Comm'n App.1925, judgm't adopted)). As part of this discussion, the court noted that the insurer in the case before it had actual knowledge that the insured had not listed all of his doctors' names in response to a question. The court then stated: "If [the insurer]

had followed up its investigation with Dr. Pentecost, Dr. Chandler's treatment would have been revealed which in turn would have revealed Dr. Thompson's treatment." To the extent that the federal court was relying upon *Dossett* as support for the proposition that misrepresentation is not a valid defense if further inquiry would have revealed the misrepresentations allegedly relied upon, we determine that the reliance upon *Dossett* was misplaced. The reasons for this determination should be obvious from our detailed discussion of *Dossett,* found below.

**5.** The case was appealed from a federal district court in Mississippi, but the opinion contains references to the states of Alabama and Mississippi.

isting Texas law. However, our reading of the other Texas cases relied on by Koral reveals that they do not in fact stand for the proposition stated in *Republic–Vanguard*, with one possible exception. For example, in one case, the court approved of this rule:

> Unless the applicant [for insurance] reveals all the material facts about which he is asked, it does not lie in his mouth to say that because the company knew part of his answers were untrue, it was charged with notice that all of his answers might be untrue. If the applicant makes statements that are material, which are untrue, it would void the policy, unless the company knew that those identical statements were untrue.

*Dossett v. Franklin Life Ins. Co.*, 276 S.W. 1097, 1098 (Tex. Comm'n App.1925, judgm't adopted). The court went on to say:

> The right of the beneficiary to recover, notwithstanding false statements of material facts, must be predicated upon the conception of waiver growing out of a knowledge, on the part of the company of the falsity of the particular answer or answers. It would not do to charge the company with any sort of notice that, because one answer is false, therefore another answer may be or is false. The test always is, to avoid the effect of fraud as to a material fact upon the score of waiver, the company must know the identical statement as made is untrue.

*Id.* The court merely applied these principles to the case before it and ruled against the insurer because there was a finding of actual knowledge by the insurer of the falsity of the statements allegedly relied upon. *Id.* at 1098–99. In this vein, the court did state that the insurer could not benefit from a showing that it was unaware of the full extent of the falsity of the insured's answers. If a *particular* answer is known by the insurer to be false, it does not matter that the insurance company was unaware of the extent of the falsity. *Id.* at 1099. When examined in context, these statements by the court are shown to be both reasonable and consistent with the other statements to the effect that the insurer is charged with knowledge of only those particular answers that it actually knew were false. The court was referring to the fact that the insurance company knew that the applicant had been examined and rejected by insurers on several occasions, but the company was not aware of the names of those other insurers or the exact number of such insurers. *See id.* at 1098, 1099.

Except for one case discussed below, none of the other Texas cases invoked by Koral are inconsistent with the *Isenhower* line of cases, nor do they provide support for *Republic–Vanguard's* contrary holding. In one case cited by Koral, the court stated the rule in this way: "If the applicant makes statements that are material, which are untrue, it will avoid the policy, unless the company knew that those identical statements were untrue." *Inter–Ocean Ins. Co. v. Ross*, 315 S.W.2d 71, 73 (Tex.Civ.App.—Fort Worth 1958, no writ). This statement certainly indicates that only actual knowledge of the falsity of misrepresentations will vitiate a defense based on those false representations. *See also Wortman v. Young*, 235 S.W. 559, 560–61 (Tex.Comm'n App.1921, judgm't adopted) (there can be no reliance on representations when party has actual knowledge of falsity of those representations); *Odom v. Insurance Co. of State of Pennsylvania*, 441 S.W.2d 584, 590 (Tex.Civ.App.—Austin 1969) (if insurer knows answers are false, it cannot rely on the falsity of those answers as a defense), *aff'd*, 455 S.W.2d 195 (Tex.1970); *John Hancock Mut. Life Ins. Co. v. Brennan*, 324 S.W.2d 610, 614 (Tex. Civ.App.—San Antonio 1959, writ ref'd n.r.e.) (insurer that knew of falsity of deceased's answers as a result of its independent investigation cannot be said to have relied on those answers); *Caprito v. Grisham–Hunter Corp.*, 128 S.W.2d 149, 159 (Tex.Civ.App.—Eastland 1939, writ dism'd judgm't cor.) (one who discovers that representations were false cannot claim that he was deceived by those representations); *United States Fidelity & Guar. Co. v. McCollum*, 70 S.W.2d 751, 753 (Tex.Civ. App.—El Paso 1934, no writ) (if a party to

a contract did not believe representations, he was not deceived and, therefore, cannot rescind the contract); *Allen v. Lasseter,* 35 S.W.2d 753, 757 (Tex.Civ.App.—Waco 1931, writ ref'd) (party to a contract who discovers falsity of representations cannot claim that he was deceived and cannot be said to have relied upon the truth of the representations). Yet another case relied upon by Koral explicitly states the *Isenhower* rule:

> It is true that one who makes a false statement, inducing another to act to his hurt, will not be heard thereafter to say the other should have been diligent to inquire as to the truth of the matter, for, *in the absence of actual knowledge to the contrary,* the one to whom the misrepresentation has been made has a right to rely upon it.

*Thrower v. Brownlee,* 12 S.W.2d 184, 187 (Tex.Comm'n App.1929, judgm't adopted) (emphasis added). The court then properly adds that actual knowledge negatives deception. *Id.*

Koral cites three other cases that purportedly support its position: *Thigpen v. Locke,* 363 S.W.2d 247 (Tex.1962); *Courseview, Inc. v. Phillips Petroleum Co.,* 158 Tex. 397, 312 S.W.2d 197 (1957); and *Laughlin v. FDIC,* 657 S.W.2d 477 (Tex. App.—Tyler 1983, no writ). We determine that two of these cases, *Thigpen* and *Courseview,* are readily distinguishable from this case and, therefore, inapplicable. *Thigpen* merely stands for the proposition that a party to an arm's-length transaction is charged with the duty of reading what he signs, and he cannot avoid the resulting contract on the ground that he did not know what he was signing. *See Thigpen,* 363 S.W.2d at 251; *see also West v. Carter,* 712 S.W.2d 569, 575 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.); *Colvin v. Allsworth,* 627 S.W.2d at 431. Moreover, in *Thigpen,* the supreme court went on to suggest that a finding of fraud would excuse such a party from the consequences of his failure to read the contract he signed. *Thigpen,* 363 S.W.2d at 253. *Courseview* simply states the rule that the applicable statute of limitations begins to run from the time when fraud is discovered or when it could have been discovered by the exercise of reasonable diligence. *See Courseview,* 312 S.W.2d at 204–05; *see also West,* 712 S.W.2d at 575; *Colvin,* 627 S.W.2d at 431.

The third case, *Laughlin,* is somewhat more troublesome, but we conclude that its reading of *Thigpen* is too broad; to the extent that it can be interpreted as supportive of the *Republic–Vanguard* rule, we decline to follow it. *See Laughlin,* 657 S.W.2d at 482. The *Laughlin* court cited *Thigpen* for the proposition that a person must exercise reasonable care for the protection of his own interests and discover the existence of fraud if he has knowledge of facts that would put a reasonably prudent person on inquiry. In our view, this statement was taken out of context and applied by the *Laughlin* court in a much broader manner than authorized by the supreme court in *Thigpen;* moreover, the rule, as announced and applied by the *Laughlin* court, seems to be clearly contrary to the *Isenhower* line of authority, which we view as controlling. *See West,* 712 S.W.2d at 575; *Colvin,* 627 S.W.2d at 431. The *Laughlin* court indicated that the unusual nature of a transaction should put one on notice and require further investigation. *Laughlin,* 657 S.W.2d at 482. Although the existence of unusual circumstances might be viewed as a factor distinguishing that case from this one, we determine that the *Laughlin* court's suggestion that such circumstances should require further inquiry is dangerously corrosive of the *Isenhower* rule. The *Laughlin* rule would allow fraud to be rewarded even though the defrauded party lacked actual knowledge of the deception. *See American Century Mortgage Investors,* 529 S.W.2d at 583–84.

Based on our extensive examination of Texas law, we determine that there is no Texas authority, other than *Republic–Vanguard* itself (and perhaps *Laughlin*), for the proposition that an insurer's defense based on fraud and misrepresentation can be defeated because the insurer *should have known* of the fraud and misrepresentation. Moreover, we conclude that the

overwhelming weight of Texas authority is contrary to the rule announced in *Republic–Vanguard,* and we will not follow *Republic–Vanguard.* To the extent that *Laughlin* is supportive of *Republic–Vanguard,* we likewise decline to follow *Laughlin.*

■ A number of principles can be distilled from the cases that are representative of the overwhelming weight of authority. First, only actual knowledge of the falsity of representations will defeat a defense based on those fraudulent representations. *See, e.g., Thrower v. Brownlee,* 12 S.W.2d at 187. Such actual knowledge is inconsistent with the claim that the allegedly defrauded party has been deceived, and it negatives the essential element of reliance upon the truth of the representations. *See, e.g., John Hancock Mut. Life Ins. Co. v. Brennan,* 324 S.W.2d at 614; *Allen v. Lasseter,* 35 S.W.2d at 757. Further, the defense based on fraud is vitiated only if the defrauded party was aware of the falsity of the identical representations allegedly relied upon. *See, e.g., Dossett,* 276 S.W. at 1098; *Ross,* 315 S.W.2d at 73. It follows from these principles that a finding that the defrauded party should have known of the falsity of the representations allegedly relied upon is insufficient to defeat the claim of fraud. *See, e.g., Isenhower,* 365 S.W.2d at 357. Therefore, a jury finding that the defrauded party, by the exercise of reasonable diligence, should have known of the false representations is immaterial. *West v. Carter,* 712 S.W.2d at 575; *see First City Bank v. Global Auctioneers, Inc.,* 708 S.W.2d 12, 16 (Tex.App.—Texarkana 1986, writ ref'd n.r.e.) (approving the apparent disregarding of such a jury finding).

■ We now proceed to apply the law to the facts of this case. Security–Connecticut pleaded and proved the essential elements of fraudulent inducement and misrepresentation on the part of Lindsey, the insured. Security–Connecticut obtained a favorable jury finding on this issue in the form of the jury's affirmative answer to Question 10. There is no complaint on appeal that the evidence was legally or factually insufficient to support the jury's answer. Therefore, Security–Connecticut apparently was entitled to avoid the policy based on the defense of misrepresentation. *See Mayes,* 608 S.W.2d at 616.

On the other hand, Question 11 only asked the jury if Security–Connecticut *should have known* of the misrepresentations or omissions allegedly relied upon by Security–Connecticut. *See Republic–Vanguard,* 728 S.W.2d at 419.[6] Under the *Isenhower* line of authority, the jury was asked the wrong question, since only actual knowledge on the part of the allegedly defrauded party is sufficient to defeat the claim of fraud. The jury's affirmative answer to Question 11 is immaterial. *See West v. Carter,* 712 S.W.2d at 575; *Colvin v. Allsworth,* 627 S.W.2d at 431–32. There is no jury finding that Security–Connecticut had actual knowledge of the falsity of the representations upon which it based its defense.[7] Therefore, there is no basis for holding that Security–Connecticut's defense was defeated. *See Isenhower,* 365 S.W.2d at 357.

Our inquiry does not end here because a number of other issues have been raised on appeal that could be determinative. Koral suggests that the misrepresentation defense is a valid defense only against Koral's breach of contract cause of action. It contends that its other causes of action are extra-contractual and unaffected by the

---

6. Even if Question 11 could be interpreted as asking the jury if Security–Connecticut should have known of the misrepresentations *or* if Security–Connecticut had actual knowledge of the misrepresentations, the question was improper because it allowed the jury to answer affirmatively if Security–Connecticut merely *should have known* of the misrepresentations. *See Isenhower,* 365 S.W.2d at 357.

7. Under the authorities previously cited, such a finding would have been inconsistent with the jury's answer to Question 10, which included a finding that Security–Connecticut relied on Lindsey's false representations. Knowledge of the falsity of statements negatives the essential element of reliance upon the truth of those statements. *See Odom,* 441 S.W.2d at 590; *Brennan,* 324 S.W.2d at 614; *Allen v. Lasseter,* 35 S.W.2d at 757.

jury's finding of fraud by Lindsey. One of these other causes of action involved allegations that Security–Connecticut denied Koral's claim without having any reasonable basis for doing so or without having determined whether there was any reasonable basis for denying the claim. These allegations encompass breach of an insurer's common law duty of good faith and fair dealing, as well as statutory violations under the DTPA and the Insurance Code based on conduct that has been determined pursuant to law to be unfair or deceptive. *See Vail v. Texas Farm Bureau Mut. Ins. Co.*, 754 S.W.2d 129, 135 (Tex.1988); *Arnold v. National County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex.1987). This cause of action was submitted in Question 1. Koral also claimed that Security–Connecticut denied the claim even though its liability under the policy had become reasonably clear and that Security–Connecticut failed to settle the claim promptly, fairly, and equitably. These assertions encompass only statutory violations under the DTPA and the Insurance Code. *See Vail,* 754 S.W.2d at 133–36. This more limited cause of action was submitted in Question 6. Koral obtained favorable jury findings on these questions.[8]

■ We determine that Koral's contention that these causes of action are extracontractual is too broad, at least with respect to the issue as presented in this case. A recovery by Koral based on its other causes of action would be inherently inconsistent with the denial of recovery on its breach of contract cause of action; and recovery based on breach of the insurance contract is clearly barred by the misrepresentation defense.

As to the limited claim submitted in Question 6, if the policy is properly avoided or rescinded, it would be incongruous, indeed ludicrous, to nevertheless hold that Security–Connecticut denied a claim based on the policy when its liability under the policy had become reasonably clear, be-

cause there can be no liability whatsoever under an avoided or rescinded policy (or under a policy that is properly subject to avoidance or rescission). Further, it cannot be said that Security–Connecticut failed to settle the claim promptly, fairly, and equitably, because Security–Connecticut's duty to do so must be conditioned on the existence of a valid claim under the policy. *See Vail v. Texas Farm Bureau Mut. Ins. Co.*, 754 S.W.2d 129, 136 (Tex.1988) (an insured is entitled to recovery on statutory causes of action under DTPA and Insurance Code when insurer *wrongfully* refuses to pay a *valid* claim); TEX.INS.CODE ANN. art. 21.21–2, § 2(d) (Vernon 1981) (defining as unfair claim settlement practice "[n]ot attempting in good faith to effectuate prompt, fair and equitable settlements of claims submitted in which *liability* has become *reasonably clear*" (emphasis added)).

■ With respect to the broader claim submitted in Question 1, we determine that it is also dependent upon the existence of a valid claim under the insurance policy. In asserting this cause of action, Koral contended that Security–Connecticut denied the claim without a reasonable basis for doing so or without having determined whether there was a reasonable basis for denying the claim. As noted, these particular assertions state a cause of action both for breach of the insurer's common law duty of good faith and fair dealing and for statutory violations under the DTPA and the Insurance Code. *See Vail,* 754 S.W.2d at 135; *Arnold,* 725 S.W.2d at 167. However, in order to sustain a claim of breach of the duty of good faith and fair dealing, the claimant must establish both that the insurer had no reasonable basis for refusing to pay the claim *and* that the insurer knew or should have known that there was no such reasonable basis. *See Aranda v. Insurance Co. of N. Am.*, 748 S.W.2d 210, 213 (Tex.1988); *National Union Fire Ins. Co. v. Hudson Energy Co.*, 780 S.W.2d 417, 426 (Tex.App.—Texarkana 1989, writ granted). Also, both of these elements

**8.** The jury rejected Koral's additional claims regarding Security–Connecticut's alleged refusal to pay Koral's claim without conducting a reasonable investigation. Therefore, we find it un-

necessary to address the question of whether misrepresentation is a valid defense to that particular cause of action.

have to be proved in order to establish a statutory violation, which is dependent upon a determination pursuant to law that the insurer breached the duty of good faith and fair dealing. *See Vail,* 754 S.W.2d at 135. Obviously, unless breach of the duty of good faith and fair dealing is first established, the essential determination pursuant to law is absent. *See id.* In this case, the fact that the insurance policy is determined to be avoidable or subject to being rescinded would be an eminently reasonable basis for refusing to pay the policy proceeds, and at least one of the essential elements of Koral's claim would be unfounded.

For the above reasons, we conclude that, although each of the extra-contractual claims of Koral is not as directly based on the insurance policy as is its straight contract claim, nonetheless, each is necessarily dependent upon the existence of enforceable rights under the policy. Consequently, under the facts and circumstances of this case, we hold that Security–Connecticut's defense of fraudulent inducement and misrepresentation is a valid and available defense against all of Koral's claims upon which Koral obtained favorable jury findings.[9]

As previously noted, we have been considering the merits of Security–Connecticut's points of error one and three as raised in its cross-appeal, in which Security–Connecticut claims that the trial court erred by rendering judgment in favor of Koral and by failing to render judgment in favor of Security–Connecticut. In its brief responding to the cross-appeal, Koral raises a number of issues in points labeled as cross-points. Koral suggests that we should consider these cross-points only if we sustain any of Security–Connecticut's points of error presented in the cross-appeal. However, because at least some of Koral's cross-points present reasons why Security–Connecticut's points of error should not be sustained, we consider it appropriate to address Koral's cross-points before disposing of Security–Connecticut's points of error.

■ In its first cross-point, Koral argues that the trial court's judgment in its favor should be affirmed because Security–Connecticut failed to obtain jury findings showing compliance with article 21.17 of the Insurance Code. That provision states in pertinent part:

> In all suits brought upon insurance contracts or policies hereafter issued or contracted for in this State, no defense based upon misrepresentations made in the applications for, or in obtaining or securing the said contract, shall be valid, unless the defendant shall show on the trial that, within a reasonable time after discovering the falsity of the representations so made, it gave notice to the assured, if living, or, if dead, to the owners or beneficiaries of said contract, that it refused to be bound by the contract or policy; provided, that ninety days shall be a reasonable time....

TEX.INS.CODE ANN. art. 21.17 (Vernon 1981). This statutory notice is an essential element of a defense based on misrepresentation. *Womack v. Allstate Ins. Co.,* 156 Tex. 467, 470–71, 296 S.W.2d 233, 235–36 (1956); *Paramount Nat'l Life Ins. Co. v. Williams,* 772 S.W.2d 255, 265 (Tex.App.— Houston [14th Dist.] 1989, writ denied); *Prudential Ins. Co. v. Torres,* 449 S.W.2d 335, 337 (Tex.Civ.App.—San Antonio 1969, writ ref'd n.r.e.). In order to establish that the statutory notice was given within a reasonable time, the record must show when the insurer discovered the misrepresentations. *See Womack,* 156 Tex. at 471, 296 S.W.2d at 235; *Paramount,* 772 S.W.2d at 265; *Prudential,* 449 S.W.2d at 337–38.

■ Koral argues that since no jury question was submitted inquiring as to when Security–Connecticut discovered Lindsey's misrepresentations, Security–Connecticut failed to establish an essential

---

9. We are aware that at least one court of appeals has indicated that misrepresentation does not constitute a defense against claims of violations of the DTPA and the Insurance Code. *See Progressive County Mut. Ins. Co. v. Boman,* 780 S.W.2d 436, 440 (Tex.App.—Texarkana 1989, no writ). However, to the extent that the court's opinion is in conflict with our narrow and specific holding, we decline to follow it.

element of its defense. However, we have combed the record for any indication that compliance with the statute was a disputed factual issue, and we find no such indication. Koral has not given us any citation to the record pointing out any conflict regarding the statutory notice. Security–Connecticut's letter notifying Koral that the claim would not be paid stated that the investigation conducted *after* notice of Lindsey's death had revealed the misrepresentations allegedly relied upon. The letter referred specifically to Mrs. Lindsey's statement dated September 5, 1986. There is evidence in the record that this statement provided the initial evidence that Lindsey had made misrepresentations in his applications for the life insurance. There is evidence that Mrs. Lindsey provided new information regarding medical treatment and treating personnel that had not been disclosed by Lindsey. Lindsey died on July 10, 1986. The letter from Security–Connecticut notifying Koral that the claim would not be paid because of the misrepresentations was dated October 1, 1986. Thus, the evidence shows that Security–Connecticut became aware of the misrepresentations allegedly relied upon sometime after Lindsey died. There is evidence that this knowledge was not acquired until at least September 5, 1986. None of this evidence was disputed. Even assuming that Security–Connecticut learned of the fraud very shortly after Lindsey's death, less than ninety days elapsed from the discovery of the misrepresentations to the date of the notice letter.

It is elementary that undisputed factual propositions need not be submitted to the jury. *See Sullivan v. Barnett,* 471 S.W.2d 39, 44 (Tex.1971); *Martin v. United States Trust Co.,* 690 S.W.2d 300, 310 (Tex.App.—Dallas 1985, writ ref'd n.r.e.). The uncontroverted evidence in this case shows that Security–Connecticut notified Koral of its reliance upon the defense of misrepresentation in compliance with article 21.17 of the Insurance Code. We, therefore, overrule Koral's first cross-point. For the same reasons, we overrule Koral's fifth cross-point, which contends that the trial court erred by not submitting a question requested by Ko-ral that would have asked the jury if Security–Connecticut satisfied the notice provisions of article 21.17 of the Insurance Code.

In its second cross-point, Koral contends that the trial court's judgment should be affirmed because Security–Connecticut adduced no evidence of the date it discovered Lindsey's misrepresentations. In reviewing this no evidence point of error, we are required to consider only the evidence and inferences which support the fact issue or fact finding. *Transport Ins. Co. v. Mabra,* 487 S.W.2d 704, 707 (Tex.1972). There was evidence that the misrepresentations were first discovered when Mrs. Lindsey's statement was obtained on September 5, 1986. Therefore, we cannot say that there was no evidence regarding the date of discovery of the misrepresentations. We overrule Koral's second cross-point.

Koral maintains in its third cross-point that the evidence established as a matter of law that Security–Connecticut knew of any misrepresentations prior to issuance of the insurance policy and, therefore, did not give the statutory notice within a reasonable time. We note initially that the relevant issue does *not* involve a question as to when Security–Connecticut became aware of *any* misrepresentations. The issue concerns when Security–Connecticut discovered those misrepresentations that were material to the risk and allegedly relied upon by Security–Connecticut. *See Mayes v. Massachusetts Mut. Life Ins. Co.,* 608 S.W.2d at 616. Appellate review of Koral's "matter of law" point can involve two steps. First, we examine the record for any evidence supporting the proposition that Security–Connecticut did not know of the misrepresentations before it issued the policy. Then, *if* there is no evidence supporting that proposition, we must next examine the entire record to determine if the contrary proposition is established as a matter of law. A party asserting a "matter of law" point can prevail only if he clears both of these hurdles. *See Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989). As we have previously detailed, there is evidence in the record indi-

**150**

cating that Security–Connecticut first discovered the misrepresentations allegedly relied upon only after Lindsey's death, which was well after the policy was issued. Koral has failed to surmount the first hurdle, and we, therefore, overrule its third cross-point.

In its fourth cross-point, Koral argues that the trial court's judgment should be affirmed because Lindsey died outside of the contestable period of the policy. In relevant part, the policy states: "After this Policy has been in force for two years from the Issue Date, during which time the Insured was living, we [Security–Connecticut] can't argue against its validity...." The issue date on the policy is August 13, 1984. Lindsey died on July 10, 1986, a date less than two years from the issue date of the policy.

 In the absence of ambiguity, insurance contracts are to be interpreted generally as other contracts are interpreted. *Southern Life and Health Ins. Co. v. Simon*, 416 S.W.2d 793, 795 (Tex.1967). Courts must interpret the meaning of the language actually used in a contract and give effect to the intention of the parties as expressed in the writing. If the language is plain, it must be enforced as written. *Republic Nat'l Life Ins. Co. v. Spillars*, 368 S.W.2d 92, 94 (Tex.1963). The rule that insurance contracts are to be strictly construed against the insurer and in favor of the insured is applied only in cases of ambiguity. *See Simon*, 416 S.W.2d at 795; *Spillars*, 368 S.W.2d at 94. The question of whether a contract is ambiguous is a question of law to be decided by the court. *R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518 (Tex.1980). The terms of the Lindsey policy concerning contestability are plain and unambiguous; therefore, we enforce those terms as written. By the clear terms of the policy, Lindsey died within the contestability period. Since the pertinent policy provisions are unambiguous, the case relied upon by Koral is inapplicable. *See Parchman v. United Liberty Life Ins. Co.*, 640 S.W.2d

694, 697 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.).[10] We overrule the fourth cross-point.

 In its sixth cross-point, Koral contends that the trial court erred by failing to submit Koral's requested jury questions inquiring as to whether Security–Connecticut had engaged in an unconscionable action or course of action with respect to Koral. Koral maintains that there was evidence of such action by Security–Connecticut. The DTPA defines an unconscionable action or course of action as:

> an act or practice which, to a person's detriment:
>> (A) takes advantage of the lack of knowledge, ability, experience, or capacity of a person to a grossly unfair degree; or
>> (B) results in a gross disparity between the value received and consideration paid, in a transaction involving transfer of consideration.

Tex.Bus. & Com.Code Ann. § 17.45(5) (Vernon 1987).

 Koral asserts that there was a gross disparity between the value received by Koral under the policy and the consideration paid for the policy. The evidence showed that the policy was issued on August 13, 1984, but the policy date was specified as June 2, 1984. Premiums were applied from the June policy date forward. C. Ray Mitchell, a Vice President of Security–Connecticut, testified that, if Lindsey had died during the period between the policy date and the issue date, Security–Connecticut would not have issued the policy. Of course, Lindsey did not die during that period. There was undisputed evidence that the policy was dated June 2 *as requested by Lindsey* on his application for the insurance. There was additional uncontroverted evidence that customers make such requests because there are benefits associated with an earlier policy date, such as initially lower premiums and an earlier buildup of cash surrender value. Based on our examination of the record, we deter-

---

**10.** To the extent, if any, that *Parchman* can be read as being contrary to the well-established principles of interpretation upon which we rely, we decline to follow it.

mine that there was no evidence that Security–Connecticut engaged in an unconscionable action or course of action by complying with Lindsey's explicit request for an early policy date. In our view, an issue of fact regarding unconscionability does not exist when a party's challenged conduct is shown to have been undertaken in compliance with a consumer's request.

Likewise, we find no evidence that Security–Connecticut took advantage of Lindsey or Koral to a grossly unfair degree. On the contrary, the record indicates that Lindsey attempted to take advantage of Security–Connecticut. The trial court properly refused to submit questions on unconscionability because the claim of unconscionability was not supported by evidence. *See Felmont Oil Corp. v. Pan Am. Petroleum Corp.,* 334 S.W.2d 449, 454 (Tex.Civ.App.— El Paso 1960, writ ref'd n.r.e.); Tex.R. Civ.P. 278. We overrule Koral's sixth cross-point.

Having disposed of all of Koral's cross-points, we now return to Security–Connecticut's first and third points of error as raised in Security–Connecticut's cross-appeal. Summarizing our previous conclusions, we determine that a finding that Security–Connecticut should have known of Lindsey's misrepresentations does not vitiate Security–Connecticut's defense based on those misrepresentations and fraudulent inducement. *See, e.g., Isenhower,* 365 S.W.2d at 357. Only actual knowledge of the misrepresentations allegedly relied upon would defeat Security–Connecticut's defense of fraud. *See, e.g., Dossett,* 276 S.W. at 1098; *Ross,* 315 S.W.2d at 73. Therefore, the jury's answer to Question 11, wherein the jury found that Security–Connecticut should have known of the misrepresentations allegedly relied upon, is immaterial. *See West v. Carter,* 712 S.W.2d at 575; *Colvin v. Allsworth,* 627 S.W.2d at 431–32. We further conclude that Security–Connecticut's defense of fraudulent inducement and misrepresentation is a valid defense against all of Koral's claims upon which Koral obtained favorable jury answers. And the jury found, in answer to Question 10, that the elements of Security–Connecticut's defense had been established.

Because Security–Connecticut established its defense of fraud, the trial court erred in rendering judgment in favor of Koral. Furthermore, the trial court erred by not granting judgment in favor of Security–Connecticut. Security–Connecticut pleaded and proved facts that show that it was entitled to avoidance and rescission of the insurance contract. Therefore, we sustain Security–Connecticut's first and third points of error as presented in its cross-appeal.

In its second point of error in its cross-appeal, Security–Connecticut contends that the trial court erred in denying its request for attorney's fees. In its brief, Security–Connecticut grouped its first three points of error together. However, its argument under those points contains nothing in support of its second point of error. There is no argument concerning the second point, nor is there any citation of applicable authority. Therefore, nothing is presented for review, and Security–Connecticut's second point of error is waived. *See Charter Builders v. Durham,* 683 S.W.2d 487, 489 (Tex.App.—Dallas 1984, writ ref'd n.r.e.); *National Bonding Agency v. Demeson,* 648 S.W.2d 748, 751 (Tex.App.—Dallas 1983, no writ); Tex.R.App.P. 74(f).

Because of our disposition of Security–Connecticut's first and third points as raised in its cross-appeal, we determine that it is unnecessary to address its fourth and fifth points.

In its appeal, Koral raises forty-two points of error. Points one through three complain of the trial court's failure to treble the damages awarded to Koral. By our disposition of Security–Connecticut's points one and three in its cross-appeal, we have concluded that the trial court erred in awarding judgment in Koral's favor. Since Koral was not entitled to any award of damages, we overrule Koral's first three points of error. In points of error four through twelve, Koral contends that the trial court erred in finding that there was no evidence to support the jury answers that were disregarded by the trial court. In its remaining points, Koral argues that the trial court erred in finding that the

disregarded jury answers were in conflict with other jury answers. The disregarded jury answers provided support for Koral's causes of action based on alleged breach of the duty of good faith and fair dealing and violations under the DTPA and the Insurance Code. We have already determined that Security–Connecticut's defense of fraud was a valid and available defense against these causes of action, and we have further determined that Security–Connecticut established this defense. We, therefore, conclude that the trial court erred in rendering judgment for Koral and that the trial court should have rendered judgment for Security–Connecticut. In view of this disposition, any error committed by the trial court in disregarding the jury answers would necessarily be harmless. We, therefore, overrule Koral's points four through forty-two.

We reverse the judgment of the trial court. We render judgment that Koral take nothing on all of its claims against Security–Connecticut. We render judgment in favor of Security–Connecticut granting rescission of the insurance contract. We affirm that part of the trial court's judgment denying Security–Connecticut's request for attorney's fees.